ROUSSET *against* The Insurance Company of North    *Saturday,*
<div align="center">America.</div>    December
24th.

C ASE for the opinion of the court, in substance as fol-    The as-
lows:    signee of a
    policy of
The defendants, on the 28th *January* 1799, underwrote a    insurance
policy of insurance in the name of *Benjamin Nones*, for 4000    takes it liable
dollars, on the brig *Charlotte*, at and from *Philadelphia* to *Wil*-    to all defal-
    cations, to
*mington, N. C.*, and at and from thence to *Martinique*. At the    which it was
time of effecting the insurance, *Nones* was the true owner of    subject be-
    fore the as-
the *Charlotte*, and she was duly registered in his name. He    signment.
    In a suit
continued to own her until the 28th *November* 1799, when he    by the as-
sold her to the plaintiff. On that day he executed a bill of sale    signee, the
    underwriters
of the brig, and delivered into the hands of the plaintiff the    may set off a
    debt due by
the assignor at the time of effecting the policy, though it be an *open* policy, and the claim
for a *partial* loss.

VOL. I.                    3 I

1808.

Rousset
v.
Ins. Co.
N. A.

above policy of insurance, as his own, and for his own use and benefit; and on the 21st *January* 1800, the policy was formal-ly assigned by indorsement. In the month of *March* 1799 the brig sailed upon the voyage insured, and during the prosecution of it suffered damage from stress of weather, which was repaired in the *West Indies* during the winter of 1800, and to recover for which this action was brought; but at the time of effecting the policy, and ever since, *Nones* was indebted to the defendants for premiums on insurance made by them for him on other vessels and cargoes, and on the same vessel for a former voyage; and he was insolvent at the time he sold the vessel, and at the commencement of this suit. The question for the court was, whether the defendants had a right to set off, against the plaintiff's demand for a partial loss, so much of the debt due to them by *Nones*, as was equal thereto. If they had, judgment to be entered for the defendants; if not, judgment for the plaintiff.

Upon breaking the case, the court intimated an opinion that the precise point had been determined by this court in the case of *Gourdon* against the same defendants, tried at bar in *March* 1802, (*a*) and the set-off sustained. They therefore requested

---

(*a*) GOURDON for the use of his Assignees *v.* The Insurance Company of North America. *Two actions.*

These were two actions of covenant on two policies of insurance, dated 18th of *April* 1797, the one on the schooner *Felicity*, valued at 5,000 dollars, the other on her cargo, valued at 20,000 dollars, at and from *Philadelphia* to *Leogane*, and at and from thence back. The defendants pleaded covenants performed, with leave, and a set-off.

The causes were tried together at bar in *March* term 1802, when the following facts appeared in evidence. On the 23d *May* 1797 the schooner was captured on her homeward voyage, carried into *Port au Prince*, where the cargo was condemned, and the schooner acquitted; but after her acquittal, she was surveyed, found incapable of proceeding, and sold; and the net proceeds of sale amounted to thirty-four dollars only. An abandonment in both cases was admitted.

On the 19th *April* 1797, *Gourdon* assigned the two policies, the schooner, and her outward cargo, with invoices and bills of lading, to *Pratt* and *Kintzing*, to secure a debt; and on the 15th *May* 1797, he assigned all his surplus property to a committee of his creditors for their use rateably.

On the 7th of *July* 1798 *Pratt* and *Kintzing*, having received their demand due from *Gourdon*, assigned the policies to the assignees of the creditors, for whose use the action was brought.

The defendants claimed a defalcation of seven protested notes given by *Gourdon*, previous to the assignment to *Pratt* and *Kintzing*, amounting to

the plaintiff's counsel to look into it, and see whether he could raise a distinction.

*Levy* for the plaintiff, at a subsequent day said, that he had examined a manuscript report of the case referred to, in the possession of Mr. Justice *Yeates*, and agreed the main point of the case to be well decided, namely, that the insurers might defalcate against the general assignees of an insolvent debtor; but that was not the present case, and therefore he thought it proper for an argument.

He contended that a policy of insurance, being made for whom it doth, may, or *shall* concern, being assignable in its nature and terms, an appendage to the ownership of the property insured, and inseparably attached to it, was not liable to a set-off in the hands of a *bona fide* assignee for a valuable con-

---

15,125 dollars, but payable after the subscription of the policies, to wit, in *June* and *October* 1797; a further sum of 1,475 dollars 50 cents on two charges of premiums for insurance made the 22d *April* and 11th *May* 1797, with a credit of three months, and of 2,800 dollars paid to *Pratt* and *Kintzing* on the 27th *March* 1798, upon the policies in question; and 9,300 dollars paid to the *United States* for duties due from *Gourdon*, on the 3d *December* following. The actions were entered on the 24th *December* 1798 to *December* term.

*Pratt* deposed to the copy of a letter from his letter book, dated 4th *May* 1797, wherein he gave notice to the company of *Gourdon's* assignment of the policies to the firm; and to his belief, that the original was given to one of his clerks the next day to be delivered. But the secretary of the company swore that no such letter had been received. The company denied that they had received any notice of the assignment of the 15th *May* 1797; and on 11th *December* 1797 *Gourdon* applied in his own name for payment of the loss.

About the 10th *May* 1797, *Gourdon's* creditors had a meeting, when the secretary of the company attended; but it did not appear whether he had given notice to the creditors of any claims for *Gourdon's* notes, or for premiums which had not then become due.

On the 7th *November* 1797, the company received notice of the loss by the captain's protest being shewn to their secretary; and on the 16th *November* a formal abandonment and cession were executed by *Gourdon*, and *Pratt* and *Kintzing*, but no evidence was given to shew when it was offered to the defendants.

It was agreed upon the trial that the jury should ascertain how far the defendants were entitled to a defalcation; and that the balance should be liquidated by reference.

*Dallas* and *Rawle* argued for the plaintiff, that no set-off was to be allowed against a policy of insurance, which was assignable like a bill of lading; and they cited to this point 1 *D. & E.* 26. 4 *D. & E.* 342. 2 *Valin.* 45. *Skinn.*

1808.

Rousset
v.
Ins. Co.
N. A.

sideration. It is essential to commerce, that this instrument should pass freely from hand to hand. Common law rules are not applied with strictness to documents of this description, as appears by the strong case of *Fenner* v. *Mears*; (*a*) they would clog them, and render them useless; and it is only upon a strict common law principle that the set-off can be supported. Policies have always been assignable. They are not a common law chose in action. Though executed in the name of one person, they may be, and most commonly are recovered in the name of another. *Cunningham*, 176. 178. *Spencer* v. *Franco*, *Id.* 276. [C. J. Tilghman. That is, when the plaintiff is the original *cestui que trust.*] In *Masters* v. *Miller* (*b*), Buller J.

(*a*) 2 *W. Black.* 1269.          (*b*) 4 *D & E* 342.

54. That no set-off at all events could go beyond what was expressed in the policy, which excluded all others. That the silence of the company on the 10th *May*, had lulled the creditors of *Gourdon*, and prevented them from making other insurance, which they might have done. *Park*, 320. 1 *Burr.* 492. 496. They admitted that the payment to *Pratt* and *Kintzing*, and the duties, must be allowed, but not the notes due subsequent to the assignment; for to justify set-off there must be a connexion between the demands, and they must be in the same right; *Ambl.* 407.; and nothing can be set off against an assignee, which is not due at the time of the assignment. 1 *Dall.* 28. 443. 3 *D. & E.* 186.

*Moylan, Ingersoll,* and *Tilghman,* contra, contended it was enough if the notes had come to maturity before action brought. That the rights were the same between the company and assignees, as between the original parties. *Doug* 614. 1 *Dall.* 23. 7 *D. & E.* 663. That a set-off was allowed even against notes of hand, until the act of 27th *February* 1797; and policies were never as negotiable as they. That our defalcation act was more comprehensive than the *British* statutes. That a policy of insurance was not assignable at law, but merely in equity; and that therefore no assignment could extinguish the equity of the company to set off their demands against the instrument, in whose hands soever it might be. That the words in the policy were designed merely to authorize a set-off of premium, due after action brought; and that, except in this particular, the company might do as much without them, as with them: the argument on the other side went to prove that if they had lent *Gourdon* money, they could not defalcate it even against himself.

Shippen C. J. delivered the following charge to the jury.

The insurances, loss, and abandonment have been admitted, though the time when the latter was offered to the company has not been fixed. The notice of the assignments appears to be material in no other point of view in this case, than from the inferences deduced from thence that the defendants were accessory to the loss sustained by the creditors of *Gourdon*. If the suits had been brought by him for his own use, the set-off would clearly ob-

in his very able argument, says, that the objection, that the assignee of a chose in action cannot maintain an action in his own name, has never prevailed in a mercantile case; and " in " the two instances most universally in use, it undoubtedly " does not hold, that is, in cases of bills of exchange, and po- " licies of insurance." Bills are assignable by the custom of merchants, so are policies of insurance; in each case the holder or assignee may recover in his own name. The absolute property of the instrument is in him; and therefore any equity as between the underwriter and the name in the policy is out of

<div style="margin-left:2em;">

1808.

ROUSSET
v.
Ins. Co.
N. A.

</div>

tain against him, and operate as a payment pro tanto, because the counter-demand had actually become due before the actions were instituted; and if the insurance company have duly and fairly made their claim known, their right of set-off continues against the assignees. Mr. *Pratt* in his deposition takes notice of the notes payable to the company, and says they had not become due at the time of the assignment; but how could he have known of them, unless he had received notice thereof from the defendants? and would he not thus be apprised and put on his guard?

The law on the subject may be ascertained without much difficulty. The difficulty, if any, will depend on the facts disclosed in evidence. To ascertain the law, it will be proper to premise some considerations relating to negotiable paper, and what instruments come under that denomination.

Bills of exchange, and notes payable to order in the city of *Philadelphia*, are properly negotiable paper, after such notes have been indorsed *bona fide* in the course of trade. The effect is that the holder may sue in his own name, and may recover the money from the drawer without any embarrassment whatever on account of any counter demands, or want of consideration as between the drawer or maker and the payee.

Bonds may be assigned by our law so as to enable the assignee to bring an action on them in his own name, but without the other qualities of negotiable paper; that is, if the obligor had before the assignment any just demand against the obligee, which he could have set off against him if there had been no assignment, he may set off the same against the assignee, who takes the bond subject to all the equity that it was subject to before the assignment. This rule is however subject to one qualification. If the assignee, when he is about to take the assignment, calls upon the obligor to know whether the whole money is due, and the obligor tells him it is a good bond, but is entirely silent as to any claim of his against the bond, he can never after open his mouth against the demand of the assignee.

A policy of insurance is not assignable in its nature; but it is assignable in equity. It is not like a bill of lading, which is assignable in its nature, and the assignment of which vests the absolute property in the goods assigned in the assignee. A policy of insurance, in its qualities, resembles a bond for payment of money at a future day, more than any other instrument. They are both *choses in action*. It is only by a particular act of assembly that the assignee may bring the action in his own name, if the assignment be sealed and delivered in the presence of two subscribing witnesses; but the law does

1808.

ROUSSET
v.
Ins. Co.
N. A.

the question. Such is the universal mercantile usage. In *France* a policy is negotiable to order or bearer like a bill, 2 *Valin* 45.; and the ordinances and usages of *France* have often received great attention from this court, upon questions of the law merchant.

The circumstance, that the policy is inseparably attached to the property, has great weight from analogy to the common law cases of covenants running with the land. In these, and in all other real covenants, the assignee may sue in his own name.

But the defendants have no equity. The policy authorizes certain defalcations, as the premium of the particular insurance, and the two per cent. abatement; all others are therefore excluded. *Expressum facit cessare tacitum.* They should have retained the policy until the premiums were paid. They have enabled *Nones* to impose upon the plaintiff, and have lulled him into a false security, by which they should lose, and not he.

*Gourdon's* case is very distinguishable from this. His assignees, like assignees of *bankrupt*, stood precisely in his place, and they in fact sued in his name. The equity which the defendants had against him, they therefore had against his assignees, according to *Bosvill* v. *Brander* (*a*) and *Taylor* v.

(*a*) 1 *P. Wms.* 459.

not prevent the obligor from showing a want of consideration, or setting off any counter demand against the obligee.

I have before mentioned that it is incumbent on the assignee of a bond to call upon the obligor, to know the quantum of the debt due. I take it to be likewise incumbent on the assignee of a policy to call upon the underwriter and inform him before any account of a loss, and to inquire if he has any thing to set off against the policy. If the underwriter has this notice, and either makes no objection and claim, or is totally silent as to any claim, I should consider the assignee of the policy in the same condition, as the assignee of a bond under like circumstances; and that both are entitled to recover notwithstanding the underwriter in the policy, or the obligor in the bond, should afterwards discover that he had a counter demand; and that their mouths are stopped by their acquiescence or silence; otherwise in both cases it would lead to a deception.

The chief question then in this case is a question of fact, whether there was any notice given to the insurance company of the assignment; and whether they either by acts, words, or silence, waived giving any intimation of their demands against the assured. We will only add that the underwriters are acquitted, unless the plaintiff or his creditors have suffered by their default in not letting their claims be known.

The jury found for the plaintiff, but that the defendants were entitled to the defalcation.

*Wheeler* (*a*). But here we have paid a valuable consideration. **1808.**
*Gourdon's* was also a valued policy, and the claim, for a total
loss; this is an open policy, and the claim for a partial loss; and it
is clear by the law of *England*, which seems by the case of *Gor-*
*don* v. *Bowne* (*b*) to be also the law of New York, that a set-off
is not maintainable in such a case. I however do not mean to
press this point, as our act of defalcation goes further than the
*English* statutes.

ROUSSET
*v.*
Ins. Co.
N. A.

*Hopkinson* and *Ingersoll*, who were to have argued for the
defendants, were stopped by the court.

TILGHMAN C. J. This cause comes before us on a case sta-
ted. *Benjamin Nones* had an insurance effected on the brig
*Charlotte.* He afterwards assigned the policy to the plaintiff,
and then became insolvent. There was a partial loss, concern-
ing which there is no dispute. The only question is whether
the defendants can set off against the plaintiff, a debt due from
*Nones* at the time the policy was underwritten.

The court thought it unnecessary to hear the counsel for the
defendants; because they considered this point as having been
settled in the case of *Gourdon* (for the use of his assignees)
against *The Insurance Company of North America*, tried in
bank at *March* term 1802. The charge of chief justice *Shippen*,
delivered with the approbation of all the judges, established a
principle decisive of the question now before us: that is to say,
that a policy of assurance was to be considered as other *choses*
*in action*, which are not assignable by the common law, but on-
ly in equity; and consequently the assignee takes it liable to all
defalcations to which it was subject before the assignment.
That case was fully argued. I have read judge *Yeates's* manu-
script note of it, and find that the arguments urged by Mr.
*Levy* in this case, were then brought forward by the counsel
for *Gourdon's* assignees. Upon the authority of that case, there-
fore, the court are now of opinion that the defendants are en-
titled to the set-off for which they contend.

SMITH J. I am of opinion that the defendants are entitled to
the set-off claimed, under the practice between the assured and

(*a*) 2 *Vern.* 564.        (*b*) 3 *Johnson,* 150.

1808.          the underwriters in the city of *Philadelphia*. I do not need the
─────────      aid of the decision in *Gourdon's* case to warrant this opinion; it
Rousset        is founded on the common course of mercantile transactions.
  *v.*
Ins. Co.
N. A.          Per Curiam,                                    Judgment for defendants.