4 Wh  68
d·28 SC ¹³⁴⁶

[PHILADELPHIA, JANUARY 21ST, 1839.]


DE BOLLÈ *against* THE PENNSYLVANIA INS. CO.


1. Where a policy of insurance is executed, under seal, between the insurer of the one part, and a person named, " as well in his own name, as for and in the name and names of all and every other person and persons to whom the property insured does, may, or shall appertain," of the other part, an action of covenant cannot be maintained upon it in any other name than that of the person who was party to the deed.

2. No one can claim the benefit of an insurance made by another for account of whom it may concern, without showing that it was the intention of the person obtaining the insurance to embrace his interest in the goods, at the time of the insurance; but *it seems*, that to render an insurance available to a party by adoption, it is not necessary that he should have adopted it before the loss happened.

3. Insurance was made on a box of jewelry by the defendants for A., " as well in his own name, as for and in the name and names of all and every other person and persons to whom the property insured does, may, or shall appertain." Evidence was given that the plaintiff had purchased certain jewelry and shipped it on board the vessel in a box, but no evidence was given of any intercourse between A. and the plaintiff, or of any agency on the part of A. in purchasing or shipping it, or that at the time of obtaining the insurance, he had any intention of insuring for the plaintiff: *Held*, that in the absence of such evidence, the judge who tried the cause was right in directing the jury to find for the defendants.


THIS was an action of covenant, brought by John M. De Bollè, for the use of his assignees, William Vineyard and Joseph Flemming, against The Insurance Company of the State of Pennsylvania, upon a policy of insurance, dated the 15th day of December, 1827, between the defendants of the one part, and Joseph Femming, " as well in his own name, as for and in the name and names of all and every other person and persons to whom the property thereby insured, did, might, or should appertain," of the other part; whereby the defendants insured the sum of $2400 on " one box of jewelry," on board a vessel called the Nueva Eloisa, on a voyage from Philadelphia to the Havanna.

The declaration averred that the insurance was effected by Flemming, as agent of the plaintiff. The defendants pleaded *non infregerunt conventionem*, with leave to give the special matter in evidence.

The cause was tried on the 27th of November, 1838, at a Nisi

Prius held in Philadelphia by Serjeant, J. The plaintiff's counsel gave in evidence the policy of insurance, and proved by a witness, that a certain quantity of jewelry, intended for the South American market, was bought of him by the plaintiff, De Bollè, in the autumn or winter of 1827, and packed by the witness in a box. The depositions of witnesses in the Havanna, proving that the jewelry was damaged by sea-water were also read.

The defendant's counsel gave in evidence the order for insurance, signed by Joseph Flemming, dated the 15th of December, 1827, directing the insurance of $2400 on a box of jewelry, by the Spanish schooner Nueva Eloisa, at and from Philadelphia to Havanna. Evidence was also given to show that the box of jewelry had been stowed in an improper and unsuitable part of the vessel.

Judge Sergeant charged the jury in substance as follows:

"When a policy is made in the name of another person, as in this case, it is necessary for the plaintiff to show not only the policy, and that he was the owner of certain jewelry shipped on board the vessel, but he is bound to show that he had an interest in that policy. The plaintiff here has properly averred in the declaration, that Flemming, in effecting this policy, did it as his agent; and this is a material fact which must be proved. Slight evidence would be sufficient to enable the jury to infer this fact: but still there must be some evidence; for without any evidence at all, it would be error to submit the fact to the jury. There must be proof, either of some previous authority, or of some cotemporary connection between the parties, from which an authority can be inferred, or something to show that the party effecting the policy in his own name intended to embrace the interest of the person by whom the shipment was made. If that is the case, and the party interested afterwards ratifies the act thus done for his benefit, it will be sufficient. But without any evidence whatever of such authority, express or implied, or of such intention, or of any correspondence, intercourse, or connection between the parties, or duty or obligation on the part of Flemming, from which an authority could be inferred, to effect this policy for the plaintiff, the rule of law is, that the owner cannot recover. If he could, it would open a door to the practice of fraud: for the person thus effecting a policy in his own name, might, at a subsequent time, and after a loss has been incurred, transfer the right in it to such person as happened to have sustained the loss, though never known or contemplated when the policy was made. In this case I have looked at the evidence with attention, and I am not able to find any evidence whatever from which the interest of the plaintiff in the policy can be inferred. There is nothing bearing on this point, but the order by Flemming; the policy in Flemming's name; the ownership of the jewelry by De Bollè; and the adoption of the

policy a considerable time afterwards by De Bollè. In my opinion the rule of law requires something more : and I am of opinion, that in the absenee of any such evidence the defendant is entitled to a verdict."

The jury under the direction of the Court, found a verdict for the defendants.

The plaintiff moved for a new trial, and filed the following reasons.

" 1. This was an action of covenant on a policy of insurance. The policy was in the usual terms. It declared, that it had been made between the defendants of the one part, and Joseph Flemming as well in his own name as for and in the name and names of all and every other person or persons to whom the property thereby insured, did, might or should appertain, in part or in the whole, of the other part, and *witnessed* that the defendants caused the said Joseph Flemming and every of them to be insured in the sum of two thousand four hundred dollars. The policy, in addition to the usual contents, expressly set forth, that the insurance was " on one box jewelry;" and there was no other jewelry on board, yet, the judge charged the jury, that the verdict must be for the defendants, because no evidence had been given, of express authority from the plaintiff, (in whom the interest was alleged to be by the declaration) to Joseph Flemming, by whom the insurance was effected, to effect the same.

2. The judge gave it as law to the jury, that the plaintiff could not recover, without having proved by Joseph Flemming or otherwise that he acted as the agent of the plaintiff in effecting the insurance, although the suit was brought for the use of Joseph Flemming himself—and he was incompetent by reason of interest to give evidence.

3. The whole merits of the case were with the plaintiff; and the jury gave their verdict for the defendants, merely by direction of the Court, and they so declared ; when the fact should have been left to the jury whether the goods on which the loss was sustained were the property of the plaintiff, and were contemplated as the subject of insurance, at the time of giving the order for insurance and of effecting the policy.

4. The Court rejected the bill of lading offered by the plaintiff as incompetent evidence.

5. The Court rejected, as incompetent, the various documents which had been submitted, as preliminary proofs to the defendants, although no objection had been taken to them by the defendants, when they were exhibited and returned.

6. The verdict is against law and evidence."

(De Bollè *v.* Pennsylvania Ins. Co.)

Mr. *C. Ingersoll* and Mr. *J. R. Ingersoll,* for the plaintiff, cited *Hagedorn* v. *Oliverson,* (2 *Maule & Selw.* 485.)    *Stirling* v. *Vaughan,* (11 *East,* 623.)    *Routh* v. *Thompson,* (13 *East,* 274.) *Lucena* v. *Crawford,* (2 *New Rep.* 209.)    *Ins. Co. Penn.* v. *Smith,* (3 *Wharton's Rep.* 527.)    *Master* v. *Miller,* (4 *Term Rep.* 342.) *Rousset* v. *North Am. Ins. Co.* (1 *Binn.* 432.)    *Ruan* v. *Gardner,* (1 *Wash. C. C. Rep.* 145.)    *Francis* v. *Ocean Ins. Co.* (6 *Cowen,* 404.)

Mr. *Scott* and Mr. *Randall,* for the defendants, cited 2 *Phillips on Ins.* 378.  *Platt on Covenants,* 513. *Pacific Ins. Co.* v. *Catlett,* (4 *Wendell,* 75.)  1 *Condy's Marshall,* 473.  1 *Phillips on Ins.* 51. 3 *Id.* 54.  *Paley on Agency,* 108.    *Thurston* v. *Murray,* (3 *Binn.* 326.)

The opinion of the Court was delivered by

KENNEDY, J.—Upon the trial of this cause, before Mr. Justice SERGEANT, the counsel for the defendants interposed two objections to the recovery of the plaintiff: first, that the policy of insurance, given in evidence, being executed under the seal of the defendants, at the instance and in the name of Joseph Flemming alone, no action of covenant could be maintained upon it in the name of the plaintiff. Secondly, that no evidence whatever was given, tending to prove that the plaintiff had an interest in the policy at the time it was procured by Flemming; or, in other words, that Flemming, at the time, intended the policy for the benefit of De Bollè, the plaintiff, and, therefore, the defendant was entitled to a verdict, unless the plaintiff should choose to take a nonsuit.

As to the first objection, though the learned judge inclined to think it was one that could not be got over, yet he gave no decided opinion or direction in regard to it; but, on the second, he charged the jury positively, that no such evidence had been given, and, therefore, they were bound in law to give a verdict in favour of the defendants, and could not do otherwise.

If the direction of the judge to the jury ought to have been in favour of the defendants on the first objection, still the verdict ought not to be set aside, though the direction given by him on the second were erroneous; because it must ever remain a bar to the recovery of the plaintiff, in this action at least, seeing he can by no possibility get rid of it.  We, however, do not think that the charge was erroneous upon the second objection; but still, as the point involved in the first, has been made by the defendants' counsel, and argued on both sides, it may not be improper, on account of its importance, as it respects the practice, to express our opinion upon it.

A covenant may be defined to be an *agreement* between two or more parties, reduced to writing and executed by a sealing and

(De Bollè v. Pennsylvania Ins. Co.)

delivery thereof; whereby some of the parties, named therein, engage, or one of them engages with the other, or others, or some of them, therein also named, that some act hath or hath not already been done; or for the performance or non-performance of some specified duty. A covenant then being an agreement, it is plain that in legal as also in common parlance, there must be at least two parties to it; or, it cannot be regarded as an agreement or covenant in any sense. And it would seem to be equally plain that no such covenant can be deemed perfect, unless the names of the parties are set forth or made known by it in some way; for without this it does not appear, that there are parties to it; *quod non apparet, non est,* seems to be the rule in this respect; and without parties, it is obvious there can be no agreement or covenant. Nor can a person be made a party to a mere personal covenant in a deed, who does not appear to be such, or whose name does not appear, in any way, on the face of it, by averment, so as to enable him to maintain an action thereon in his own name. In *Green* v. *Horne,* (1 *Salk.* 197,) where the plaintiff declared in covenant, that A. being indebted to him, and arrested at his suit, the defendant, in consideration that he would order the bailiff to let A. go at large, undertook and covenanted with the plaintiff to bring in the body of the said A. and deliver him into the custody of the bailiff such a day, &c., the defendant prayed *oyer* of the deed, which was, " I (the defendant) do promise and engage myself to bring in the body of A. to the custody of B. bailiff such a day :" and upon its being demurred to by the defendant, the Court held that the plaintiff could not set forth matter of fact in his declaration, not contained in the deed itself, so as to alter the case; also, that the plaintiff was no party to the deed, nor so much as named in it; and though covenant might be brought on a deed-poll, yet the *plaintiff* must be *named in it.* It will also appear from every case on the subject where an action of covenant has been sustained upon either a deed-poll or an indenture, that the name of the plaintiff was mentioned as covenantee in or on the face of the deed; though it will be seen that, to maintain the action, it is not requisite that the covenantee should execute the deed, by sealing and delivering it in either case; for it is the execution of the deed by the covenantor, which gives the right of action. *Clement* v. *Henly,* (2 *Roll. Abr.* 22. *Faits* (F.) *pl.* 2.) *Petrie* v. *Bury,* (3 *Barn. & Cres.* 353.) *Vernon* v. *Jeffreys,* (2 *Stran.* 1146; S. C. 7 *Mod.* 353.) And hence a stranger by sealing a deed *inter partes,* may bind himself by his covenant therein to one of the parties, though a party thereto cannot covenant with another who is no party. *Salter* v. *Kidgly,* (*Carth.* 76; S. C. *Holt,* 210. 1 *Show.* 58.) *East Skidmore* v. *Vandstevan,* (*Cro. Eliz.* 56; S. C. *nom.* Scudamore v. Vandenstene, 2 *Inst.* 673); 2 *Roll. Abr.* 22; *Faits* (F.) *pl.* 1. Storer v. Gordon, (3 *Maule & Selw.* 322.) *Metcalfe* v. *Rycroft,* (6 *Maule & Selw.* 75.) *Berkeley* v. *Hardy,* (5 *Barn. & Cres.* 355; S. C. 8 *Dow. & Ry.* 102.) *Barford*

v. *Stuckey,* (5 *J. B. Mo.* 22; S. C. 2 *Brod. & Bing.* 333); 1 *Bing.* 225. These authorities with the following establish a distinction between a deed *inter partes* and a deed-poll, showing that in the latter a party may covenant with a stranger and also with other persons, to do several other acts, for which every one severally may have his action. *Cooker* v. *Child,* (2 *Lev.* 74; S. C. 3 *Keb.* 94. 115.) *Lowther* v. *Kelly,* (8 *Mod.* 115.) *Lucke* v. *Lucke,* (*Lutw.* 93; *Nels. fol. ed.*) *Clement* v. *Henley,* (2 *Roll. Abr.* 22; *Faits* (F.) *pl.* 2.) Here the deed being *inter partes,* makes the objection against the plaintiff's maintaining this action upon it still stronger, if possible, than if it were a deed-poll.

It has, however, been argued that the right of a plaintiff to maintain an action on a commercial or maritime instrument, is not subject to all the rules of the common law, which obtain in regard to other instruments; and that the instrument in this case, though a deed, yet being of a maritime character, and made with Joseph Flemming, not merely for his benefit, but for that of all whom it might concern, the plaintiff, by showing that he was concerned or interested in it, ought to be permitted to maintain this action in his own name. It is true, bills of exchange have always been held assignable according to the custom of merchants, contrary to the rule of the common law which declares all *choses* in action not to be so. It may, however, be well questioned whether policies of insurance have ever been considered assignable at law, even when not under seal. The authorities, referred to by the counsel for the plaintiff, go no further, at most, than to show that they have been regarded as assignable only *in equity;* placing them, in this respect, on the same footing with *choses in action* at common law. See *Marshall on Ins.* 800. *Gourdon* v. *Ins. Co. of N. A.* (3 *Yeates,* 327; S. C. 1 *Binn.* 330, *in note.*) *Rousset* v. *Same,* (1 *Binn.* 429.) *Delany* v. *Stodart,* (1 *Term. Rep.* 22.) It is true, that the plaintiff in *Rousset* v. *Ins. Co. of N. A.* appears to have been but the assignee of the policy; but no exception was taken, on that ground, to his maintaining the action. The Court, however, expressly recognize the rule of the common law in this respect, as to *choses in action* being applicable to policies of insurance; for the late Chief Justice TILGHMAN, in delivering his opinion, mentions the case of *Gourdon* v. *Ins. Co. of N. A.,* and says, "The charge of Chief Justice SHIPPEN, delivered with the approbation of all the judges, established a principle decisive of the question now before us; that is to say, that a *policy of assurance* was to be considered as other *choses in action,* which are *not* assignable by the *common law,* but only *in equity;* and consequently the assignee takes it liable to all defalcations, to which it was subject before the assignment." The defendant being willing there that the plaintiff should maintain his action in his own name, subject to the defalcation claimed by the defendant, the Court could not, with any propriety, have turned the plaintiff out of Court, because he had

(De Bolle *v.* Pennsylvania Ins. Co.)

brought the action in his own name instead of that of his assignor; the objection being purely technical, the defendant had a right to waive it, and to permit the plaintiff to try it upon principles of equity and according to its intrinsic merits.

In support of this present action, the case of *The Maryland Ins. Co.* v. *Graham,* (in 3 *Harris & Johns.* 62,) has been cited; and much relied upon. It is clear, however, from the report of it, that the Court sustained the action there, upon the ground that the plaintiff was expressly named in the policy; which is not the case here. It would, therefore, rather seem to support the rule laid down above, that covenant can only be maintained in the name of a party to, or the covenantee, named in the deed, or his legal representatives.

It may be admitted, however, that where a broker or other person causes himself to be insured on an interest ' as well in his own name (which is expressly mentioned therein,) as in the name and names of all persons whatsoever, to whom the same may in any way appertain,' being the form used here, and considered of the like import, with a shorter form, frequently used in this country, wherein the party effecting the policy is insured for ' himself and whom it may concern,' it is competent for those persons to whom the interest insured appertains, though not expressly named in the policy, to maintain in their own names, actions of assumpsit to obtain an indemnity for losses occasioned by means of the perils insured against. But this is upon the ground that not only the consideration, to wit, the premium paid for the insurance, is considered as having moved from him, but likewise upon that of his being the party actually injured by the loss. It is a general rule, that the action of assumpsit accrues to the person from whom the consideration for the promise proceeded, and who will be the party injured if not fulfilled: and, therefore, in his name only can it be maintained. See *Blymire* v. *Boistle,* (6 *Watts,* 182,) and the cases referred to by Mr. Justice Sergeant, in delivering the opinion of the Court. But in regard to an action of covenant, which is founded upon a deed, the moving or original cause for executing it is not looked to for the purpose of maintaining the action, because the sealing and delivering the deed is a sufficient consideration for that; and renders it binding upon the covenantor to the covenantee alone, though the consideration which actually induced the making of the covenant, should appear in the deed to have come from a third person; and whether the covenant or obligation created thereby appears to be for the benefit of the covenantor or a third person, the action must be brought in the name of the covenantee. *Shep. Touch.* 369. *Bro. Obl.* 72. Joseph Flemming being the only covenantee named in the deed here, we therefore think that no action can be supported upon it against the defendants, unless it be brought in his name.

Now as to the second objection:—There can be no question here,

but the form of the policy is sufficient to include and protect the interest of the plaintiff, provided it was intended to be so at the time of its being effected. All the authorities on the subject would rather go to show that the intention of the party effecting the insurance, at the time of doing so, ought to lead and govern the future use of it; and that no one can by any subsequent act, entitle himself to claim the benefit of it, without showing that his interest was intended to be embraced by it when it was made. The case of *Boduy* v. *Union Ins. Co.* (*Condy's Marsh.* 473,) was decided on this principle as it appears to me. There the assured, supposing three thousand dollars to be shipped on his account in the West Indies; insured that sum in his own name, but using the form "and for whom it may concern," and it happening that only the sum of eleven hundred and twenty-five dollars was shipped on his account, another person, Boduy, having money on board the vessel, wished, no doubt by the consent of the person in whose name the policy was made, to recover compensation for the loss of his specie under the same policy; but Judge Washington ruled that he had no claim, as he neither procured the insurance himself, nor authorised it to be made; and it appearing not to have been intended for him. Mr. Phillips, in his treatise and collection of cases on this subject, lays down the rule in these words, page 57, "In many policies, the insured is so described, that any person may be comprehended and avail himself of the contract, by proving his interest and *showing that the policy was intended for him*." And again in page 61, after giving an abstract of several cases referred to by him, and the decisions thereon, where the form of the policies was 'for whom it might concern,' or in terms of like import, he observes, "from these cases it seems, that a policy containing this general description, may enure to the benefit of the person effecting it, or to that of any other person *for whom he intends it*, and who has requested him to effect it, or adopts it when made." This would not only seem to be the fair deduction from the authorities on the subject, but to be supported likewise by reason, principles of sound policy and natural justice. For if no evidence were required to be given, tending either to show that the plaintiff had, previously to the policy's being effected, authorised it, or that it was intended for him, and he permitted to recover without this, by merely showing his subsequent adoption of it, the party effecting the policy and having an interest on board of the vessel, which he intended to protect by it, after receiving what he had at stake, in safety, might sell and transfer his policy to others, whose goods on board of the same vessel had been lost by the perils of sea, without any policy having been effected for the purpose of covering them : and thus expose the underwriters to a risk that was never contemplated in making the assurance. The injustice arising from the operation of such a principle is manifest, and therefore ought not to be sanctioned. It tends to destroy or prevent the equal chance

(De Bollè *v.* Pennsylvania Ins. Co.)

of gain or loss to the parties, which is regarded in some measure as requisite to sustain the validity of the contract. Besides, it is obvious that it would tend to promote gambling policies, which are deemed void by the law of this state, (3 *Yeates,* 461 ;) and to render them valid by subsequent events and the agreements of the party procuring them, with third persons, without, or even against the consent of the insurers. For a policy effected by a person, who has no interest whatever to be insured, and who at the time does not intend it for the benefit of any one who has, is literally, as it would seem to me, a gambling policy; but if he can by selling the policy to the owner of property on board, either before or after a loss of it shall have happened, thus render it valid, the policy of the law, which denounces gambling policies, will be at least partially defeated. It would seem not to be requisite, in order to render an assurance available, to a party by adoption, that he should adopt it before the loss shall have happened ; for in *Hagedorn* v. *Oliverson,* (2 *M. & S.* 486,) it was not adopted by the owner of the property until after the loss, and nearly two years after the date of the policy; which is expressly stated by the report of the case, to have been made, and at the time of doing so, was intended for his benefit. The maxim *quod primum est intentione, ultimum est in operatione,* may be regarded as being applicable in such cases.

The question then arises in the case before us, was there any evidence given whatever, from which the jury could fairly have inferred an authority from De Bollè to Flemming, to effect the assurance. It is plain there was none: nor did I understand it to be insisted on by the counsel for the plaintiff on the argument for a new trial that there was: but it was earnestly contended that the assurance of such a box of jewelry by Flemming as De Bollè had given evidence of his having shipped by the same vessel, named in the policy, and it not appearing that Flemming himself had any such on board, it was sufficient to justify the jury in concluding thence, that the insurance was intended for De Bollè; and consequently it ought to have been left to the jury to be decided by them, as a question of fact. But in the entire absence of all evidence, showing the least intercourse between De Bollè and Flemming in regard to business of any kind ; or that the latter had any concern with shipping the jewelry, or purchasing it as the agent of the former, or showing that either at the time of or before effecting the assurance, he intended to do so or was doing it for De Bollè, it would be a conclusion too far-fetched, and such as the law ought not to permit a jury to make. It was not proved to have been attended by any one or more circumstances which indicate with the slightest degree of certainty, that it was intended for the benefit of De Bollè. That this box of jewelry was intended to be insured is not even proved with any degree of certainty ; but if it were, still I should doubt whether that would be sufficient to leave the question of fact, whether it was intended for

(De Bollè *v.* Pennsylvania Ins. Co.)

De Bollè, to the decision of the jury; because for aught that appears to the contrary, Flemming may have had such box of jewelry himself on board of the same vessel, or have intended an assurance upon it, without having any insurable interest in it. Every thing remains in perfect obscurity as to this; and from all the evidence given, it is utterly impossible to come to any conclusion in regard to it, other than that of mere conjecture at best. It has been said however, and argued that this case is similar to the case of *Flemming* for the use of *Marcia* v. *The Marine Ins. Co. of Philada.* tried before myself at the late Nisi Prius, wherein it was left to the jury to be determined by them as a question of fact, whether the insurance there was intended for Marcia or not. Between the two cases however, it is conceived there is this very material difference. In the case of Marcia it appeared from the evidence, that the goods alleged to have been insured, and so proved by the evidence given, were shipped by Flemming, and that Marcia had actually purchased them previously as his goods, and paid for them; from which it might be inferred that Flemming acted as the agent of Marcia in shipping the goods; and being the agent of Marcia for that purpose, he might reasonably be intended to have made the assurance for the benefit of Marcia, also as his agent. It was likewise claimed, that one witness, produced on the part of the plaintiff, testified that Flemming acted, before the insurance, generally as the agent of Marcia in the city of Philadelphia. Under this state of the evidence, it was deemed proper to leave it to the jury to say, whether the assurance was intended by Flemming, when he made it, for Marcia; and if so, whether the latter, if the jury should think that it was made without any previous authority from him, subsequently approved and adopted it: and as it was for his benefit, such subsequent adoption might be presumed, the suit having been brought for his use and carried down to trial without any dissent on his part to it ever having been made or obtained.

The rule for a new trial is therefore discharged; and judgment rendered for the defendant upon the verdict.

Judgment for the defendant.