## Keystone State Construction Co. v. Philadelphia Electric Co.

*Actions—Torts—Contracts—Negligence—Set-off.*

1. Where the breach of a contractual duty rests upon negligence, such negligence may be made the basis of an action on the contract for damages.

2. Although a tort may not be set off in a contractual action, a right of action for breach of a contract by negligence may be asserted in such an action.

*Contracts—Rights of parties to sue on a contract who are not parties to the contract.*

3. Where a contract is for the benefit of the promisee, or, in other words, where the third person claiming a benefit under the contract is a creditor beneficiary, there can be no recovery.

4. In the case of a third person, there may be a recovery only where the consideration for the promise is a transfer of property or money to the promisor, or where unusual circumstances are present.

5. Where a contract between a city and a construction company for the building of a subway provides that the construction shall support conduits and subsurface structures, a public service company cannot sue the contractor for negligence in failing to protect its conduits where there is nothing in the contract to take it out of the settled rule that a third person has no right to sue upon a contract.

6. Even if such public service corporation could sue upon the contract, a requirement of arbitration would be as binding upon it as upon the parties to the contract.

7. Where a contract is under seal, a third person not a party cannot sue upon the contract.

*Practice, C. P.—Statement of claim—More detailed statement—Demurrer.*

8. Where a defendant has not asked for a more detailed statement of claim, he is not entitled to judgment on demurrer because of a defective statement.

9. An objection to lumping charges is properly taken by a rule for a more specific statement.

Reply raising questions of law. C. P. No. 2, Phila. Co., June T., 1927, No. 3145.

*Joseph R. Embery*, for plaintiff.

*W. J. MacIntosh* and *F. B. Bracken* (of *Morgan, Lewis & Bockius*), for defendant.

GORDON, JR., J., Dec. 31, 1927.—This case is before us upon the plaintiff's reply to the defendant's counter-claim, raising questions of law.

The action is brought by the plaintiff to recover the sum of $33,460, claimed to be owing from the defendant under certain contracts between the plaintiff and the defendant in connection with the construction by the plaintiff of the subway in North Broad Street, in the City of Philadelphia. The defendant admits the amount claimed by the plaintiff to be due, and seeks to set off in counter-claims against this debt the sum of $154,926.18. These counter-claims are embodied in fifty-two paragraphs of the affidavit of defence, which, for the purpose of considering the questions of law raised by the reply, may be divided into two groups: First, those embraced within thirty-five of the paragraphs and aggregating $146,266.75, which rest upon alleged violations of contracts between the plaintiff and the City of Philadelphia for the construction of the subway, to which the defendant was not a party, but upon which it claims the right to sue as a third party beneficiary thereunder; and, second, those embraced within the seventeen remaining paragraphs and aggregating $8659.43, which rest upon alleged violations of contractual relations claimed to have been entered into directly between the parties.

Considering the first group, the fundamental question raised by the pleadings is whether the defendant, which was not a party to the contracts between

the plaintiff and the City, is entitled, because of their terms, to maintain an action for breach? The provisions of the contracts and their accompanying specifications relevant to this question follow. The regulations for bidding contained in the specifications required that the unit price bid by the contractor (the plaintiff) should include a sum sufficient to provide "for the support and protection of all structures encountered in the work of this contract, including those now within the masonry lines of the subway structure that must be removed and relocated up to the time of their removal; the support and protection of structures that it will be necessary to relocate within the excavation lines or contiguous thereto; . . . the cost of relocating any structures the contractor may move for his own convenience; and the back filling . . . and the repair or reconstruction of buildings or pipes or other structures that may be damaged." The specifications also contain the provisions that: "21. Relocation of structures. The surface and sub-surface structures that are within the masonry walls of the subway structure, or so near thereto as to necessarily interfere with its construction or with the construction of its appurtenant parts, shall be moved and relocated in accordance with detailed plans to be furnished as the work progresses. In general, structures belonging to franchise companies will be relocated by the owner and without cost to the contractor. . . ." "22. Co-operation with public service companies. The contractor shall co-operate with other contractors and with the employees, officers and agents of . . . the various companies which own or have supervision over the . . . electrical conduits and other structures on the line of the work, and shall conform to requirements of the owners of such structures in regard to their safe maintenance. In case of a dispute between the contractor or . . . agents of . . . public service corporations regarding the amount or character of the work to be done under this contract, the decision of the engineer shall be final. The contractor shall give to authorized representatives of said . . . companies free access to the excavation and site to inspect the condition and support of their structures." The plaintiff is also required to "assume all risk and responsibility for casualties of every description in connection with the work . . . that may occur as a consequence of, or during the progress of, the work under this contract;" and in the event of injury, to "fully restore such structures . . . to as good condition as existed before the injury was done;" to support and protect, up to the time of their removal, and when relocated within the excavation lines, all surface and sub-surface structures which had to be permanently located; and to conform to the requirements of the owners of such structures in regard to their safe maintenance. The contract itself provided that the plaintiff "covenants, contracts and agrees . . . to do and perform all the work and labor required, . . . including the following, to wit: . . . The support and protection of, and, where necessary, the underpinning, securing, bulkheading and maintaining of all buildings and all other structures of any description affected or liable to be affected or disturbed by the work of construction of the work aforesaid; the support and protection of walls, vaults, water mains, pipes, tubes, conduits, sewers, drains, subways and all other existing surface and sub-surface structures and railways over and adjacent to the said work of construction; the permanent support of surface and sub-surface structures that may be over, adjacent to or in the cavity excavated; . . . and in strict and exact accordance with the proposal and specifications attched hereto and made a part hereof, as fully to all intents and purposes as though herein set out at length."

Keystone State Construction Company v. Philadelphia Electric Company.

The items of counter-claim embraced in the thirty-five paragraphs now under consideration are based upon the alleged failure of the plaintiff to perform work involved in the discharge of the foregoing duties, or its negligent performance of such work, with the consequent damage claimed to have been suffered by the defendant. The plaintiff's first contention is that, since all of these items of counter-claim sound in tort, the defendant may not set them up here under the well-known rule that damages sounding in tort may not be set off in a contractual action. With this contention we cannot agree. It is true that the basis of the claims is the alleged negligent performance by the plaintiff of its duties under the contract. It is equally well settled, however, that where a breach of a contractual duty rests upon negligence, such negligence may be made the basis of an action on the contract for damages. In other words, while a pure tort may not be set off in a contractual action, a right to damages for breach of a contract by negligence may be asserted in such an action.

A more serious question, however, is presented by the plaintiff's contention that the defendant here has no standing to maintain a suit upon the contract between the plaintiff and the City of Philadelphia. This question of the right of a third party to sue upon a contract has been the subject of a long line of judicial decisions, not only in this State, but in all other jurisdictions. It is not entirely free from difficulty in any instance, and much legal learning has been expended in distinguishing those cases in which a third party may sue upon a contract from those in which suit may not be brought. Under the authority of Brill v. Brill, 282 Pa. 276, which was affirmed in a *per curiam* opinion by the Supreme Court, this question was formulated as the test for determining whether a third party beneficiary of a contract may sue upon it: Was such third party primarily intended to be benefited by the contract, or was the primary purpose to benefit one of the parties to it? Judged by this standard, it would seem that, in the contract before us, the principal purpose of the requirements that the plaintiff should do the work connected with the relocating and protecting of the surface and sub-surface structures in Broad Street, belonging to third parties, was to secure the performance of a moral, if not a legal, duty resting upon the City to protect the property of others which might be affected injuriously by the operation of building the subway. The primary purpose was in relief of the City in connection with a duty resting upon it rather than to benefit others. In the recent case of Greene County, for use of Crescent-Portland Cement Co., v. Southern Surety Co., handed down by our Supreme Court on Dec. 7, 1927, Mr. Justice Kephart, after reviewing at length all the preceding authorities, enunciated the following summary of the entire law upon the subject:

"Our conclusions may be summarized as follows: Under the general rule stated in Blymire v. Boistle, *supra*, and followed for almost a century, where the contract is for the benefit of the promisee, or, in other words, where the third person is a creditor beneficiary, there can be no recovery. In the case of a donee beneficiary, or where the contract is made for the sole benefit of a third person, there may be recovery only where the consideration for the promise is a transfer of property or money to the promisor, or where unusual circumstances are present. There are several classes of cases—such as suits against an assignee for the benefit of creditors (Hinds v. Holdship, *supra*), or suits by an undisclosed principal on a contract made by his agent (Hubbert v. Borden, 6 Wh. 79)—which are generally referred to as exceptions to the general rule, but they are really governed by other principles, such as trusts, agency, etc. Even if we were to assume this to be a donee beneficiary con-

tract, there could be no recovery, because no money or other property has been placed in the hands of the promisor, and the case does not fall under any of the recognized exceptions to the general rule.

"There is one other reason why this plaintiff cannot maintain a suit on the bond. This is an action on a sealed instrument, and in Strohecker v. Grant, 16 S. & R. 237, 241, we held that, whatever the rule might be in *assumpsit*, there could be no recovery in covenant by one not a party to the instrument. This rule was followed in De Bolle v. Pennsylvania Ins. Co., 4 Wh. 68. See, also, Mississippi R. R. Co. v. Southern Ass'n, 8 Phila. 107, 108. It is true that in Brill v. Brill, *supra,* the court below said that the rule fell when the distinction between pleadings in covenant and *assumpsit* was abolished. As we pointed out above, that case was decided purely upon the ground of public policy. Furthermore, we cannot agree that the proposition that one not a party to a sealed instrument cannot sue upon it rests entirely upon rules of pleading. Prof. Williston says (section 401) that 'none of the earlier cases which allowed a right of action to one who was not a party to the contract related to contracts under seal, and where statutes have not taken away the importance of the distinction between sealed and parol contracts, the rule that one who is not a party to a contract under seal cannot sue upon it is still applied to contracts (either) to benefit or pay a debt to a third person.' In this State, speaking generally, a seal retains its common law force, and we must conclude that the rule remains unchanged."

Applying this summary of the rules of law upon this subject, it seems conclusive that the defendant here has no right of action against the plaintiff for breach of the latter's contract with the City of Philadelphia; first, because the defendant does not come within any of the designated exceptions to the general rule that a third person has no right to sue upon a contract; and, second and conclusively, because the contract in this case being under seal, there can be no recovery under it in any case by a third person.

This disposes of thirty-five of the fifty-two items of counter-claim relied upon by the defendant. Before passing to the remaining seventeen items, aggregating $8659.43, it may be noted that, apart from the question just discussed, the defendant's claim is defective for an additional reason. The contract and specifications contain, *inter alia,* the following provisions: "If, in the opinion of the Director of City Transit of Philadelphia, any default shall happen on the part of the said Keystone State Construction Company, we will pay all loss occasioned thereby, and that the ascertained amount thereof which shall be determined by the said director, and of the truth of which oath or affirmation shall be made thereto by the said director, shall be final and conclusive upon us;" and (section 22 of the specifications) "in case of a dispute between the contractor and . . . public service corporations regarding the amount or character of the work to be done under this contract, the decision of the engineer shall be final." The defendant nowhere avers that the defaults, which it claims the plaintiff committed in the performance of the contract, were submitted to the determination of the director or of the engineer, or that any award upon its claims in this regard was made by the director. It is clear that, even if the defendant could sue upon the contract, it would be subject to the contract in its entirety and to all its relevant provisions, and the requirement of arbitration would be as binding upon the defendant as upon the parties to the contract. It follows, in any event, therefore, that the defendant would be debarred from maintaining its action, because it has failed to submit its claims to the director for arbitration, as the contract provides.

Keystone State Construction Company *v.* Philadelphia Electric Company.

The seventeen claims which are made the subject of counter-claim, independent of the contract between the plaintiff and the City, relate to alleged special undertakings by the plaintiff to perform work at the special instance and request of the defendant. The principal objection to these items is based upon the contention that they are lumping charges and are not adequately itemized. This objection is not, in our opinion, well taken. We agree with the plaintiff that the items in question are lumping charges. This, however, would not defeat the defendant's right of recovery. Such an objection is properly raised only by a rule for a more specific pleading. The existence of a special contract in each case is, generally, adequately averred; the details of the claims should be set forth with more particularity. The plaintiff has not asked for a more detailed statement of the claim, and for such a defect of pleading it is not entitled to judgment on its demurrer. As the items are defective for the reasons stated, however, the defendant will be given an opportunity to amend its counter-claim in this regard.

The Practice Act of 1915 provides that set-offs and counter-claims "shall be regarded as the defendant's statement of claim, and the plaintiff's reply as an affidavit of defence," and that where the reply or affidavit of defence raises a question of law, if, in the opinion of the court, "the decision of such question of law disposes of the whole or any part of the claim, the court may enter judgment for the defendant, or make such order as may be just." As our decision is in favor of the plaintiff upon the law relating to all of the defendant's counter-claims, except the seventeen items mentioned, which aggregate $8659.43, it follows that the plaintiff is entitled to judgment in its favor for the difference between the plaintiff's claim of $33,460 and $8659.43, as to which we hold the plaintiff's reply insufficient, to wit, $24,800.57, together with interest from June 9, 1927.

The plaintiff's reply raising questions of law is accordingly adjudged sufficient as to the sum of $146,266.75, and insufficient as to the sum of $8659.43, leave being granted to the defendant to amend its counter-claim in accordance with this opinion as to the latter amount, and judgment is now entered in favor of the plaintiff for $24,800.57, with interest from June 9, 1927, as to which the defendant's affidavit sets up no valid defence.