## Morrison *against* Beckey.

6w349<br>174  447

A verdict and judgment are conclusive of the rights of the parties thereto, as to every thing embraced within the pleadings; but they are not conclusive of the rights of the parties which accrue subsequently to the institution of the suit, although they grow out of the same subject matter.

B agreed to pay a debt due by A, for which C was surety. C paid the debt and sued B on his agreement. *Held*, that, being a stranger to the consideration, as between A and B, C could not recover on it.

ERROR to the common pleas of *Somerset* county.

Jacob Stoner, assignee of Peter Berkey, against Abraham Morrison. This was an action on the case. For the facts which were the foundation of the first action between the same parties, see 7 *Serg. & Rawle* 238. The facts of this case, and the points decided, are clearly stated in the opinion of the court.

*Alexander,* for plaintiff in error, argued that the verdict and judgment in the former suit were conclusive, and cited 6 *Coke Rep.* 7; *Cro. Eliz.* 668; 2 *Bla. Rep.* 831; 6 *Serg. & Rawle* 59; *Phil. Ev.* 234; 17 *Serg. & Rawle* 319; 3 *Watts* 46; 4 *Rawle* 277; 2 *Johns. Rep.* 210; 11 *Johns. Rep.* ,30; 10 *Johns. Rep.* 365.

The plaintiff is a stranger to the consideration upon which the agreement of the defendant was made, and therefore he cannot recover. *Bea. Lex Mer.* 429; 10 *Johns. Rep.* 215; 3 *Penns. Rep.* 518; 10 *Serg. & Rawle* 454; 1 *Sel. N. P.* 41; 3 *Pick.* 83.

*Forward,* for defendant in error, cited 2 *Watts* 104; 1 *Wms. Bla.* 354.

The opinion of the Court was delivered by

ROGERS, J.—The facts of the case, so far as they are material to the points which arise on them, are as follow:

On the 24th of March 1812, a bond was given to George Thimmel, Jun., by Conrad Piper, signed Piper & Vickroy, who were partners in iron works, and Peter Berkey, the plaintiff. In the bond, which was conditioned for the payment of 8800 dollars, Ber-

key was the surety and the other obligors were the principals. On the 3d of August 1812, Joseph Vickroy, one of the obligors above named, entered into an agreement with Abraham Morrison, the defendant, in which Vickroy, in consideration of what followed, covenanted and agreed to convey, assign and confirm to Morrison, his heirs and assigns, forever, the one undivided interest and half part of Mary Ann Gage, with the land, and stock thereto belonging, and the undivided half of all the horses, wagons, tools, houses, household furniture and implements of every kind and description, attached to and properly belonging to the said premises and concern: *subject, nevertheless, to all mortgages and judgments now binding on the said premises; that is to say, the one half part of the said mortgages and judgments; and subject also to the payment of the one half of the outstanding debts, contained in a schedule annexed.* In consideration of which the said Morrison agreed to discharge and fulfil the contract between the said Vickroy & Conrad Piper, paying to the said Piper twelve tons of bar iron, agreeably to the said contract: the sums due, by the said Piper, to the late firm of Piper & Vickroy, to be deducted therefrom. And the said Vickroy and Morrison thereby entered into partnership to carry on the said forge, at their joint expense, and to be equal sharers in the profit and loss. And the said Vickroy further, on his part, agreed to manage the said works personally, with vigilance and fidelity, during the said partnership thereby entered into. And the said Morrison agreed to attend at Pittsburgh from time to time, to contract for the sale of iron, and transact all business there that the firm might think necessary to promote their mutual interests. And it was further agreed that neither of the said parties should sell or dispose of their interest in the said forge and premises to any other person, without previously consulting the other partner, and giving him the refusal thereof, on the terms which may be offered. And it was further agreed by the said parties, that in case any difference or dispute should arise between them, which they cannot otherwise accommodate, the same should be submitted to three respectable men, to be mutually agreed on by the said parties, whose decision shall be final. For the true and faithful performance of all and singular the said covenants and agreements, the said parties bound themselves to each other, their heirs and assigns, &c.

The bond of the 24th of March 1812, signed by Piper & Vickroy and Berkey, to George Thimmel, is included in the schedule annexed to the article, the one half of which Morrison covenanted to pay. In addition to the covenants contained in the article, it was in evidence that Morrison made an express promise to pay this bond to Thimmel, but there is no evidence that he ever made an express promise to Berkey to pay it, or that he ever entered into any arrangement about it with him. It also appeared that Berkey had been compelled to pay the amount of the bond to Thimmel; for, on the 12th of August 1814, he gave Thimmel a judgment bond,

[Morrison v. Berkey.]

with Joseph Reed, his security, for the amount of the debt and interest. The judgment was entered in Somerset county, and Vickroy & Piper were discharged from their debt. The bond of Thimmel and Reed has been since paid by Hostetter, Yoder and Layman, in pursuance of arrangements made by them, with Berkey, who conveyed certain real estate to them, in consideration of their undertaking to pay this and other debts of Berkey. We agree with the court, that the judgment of the supreme court, in the case of Berkey *v.* Morrison, a report of which will be found in 7 *Serg. & Rawle* 238, is a bar to a recovery on the first count in the declaration; but this judgment is not a bar to a recovery on the other counts, for money paid, laid out and expended, and money had and received for any money which Berkey may have paid, for the use of the defendant, or which the defendant may have received for the use of Berkey, if the payment, on the receipt thereof, was since the time the former action was brought. The evidence of Hostetter shows that the money was paid by himself, Yoder and Layman, for Berkey, and is, in effect, the same as if paid by Peter Berkey himself. That objection, therefore, would not avail the defendant if the plaintiff was in other respects entitled to sustain this suit. But the defendant further insists that the statute of limitations is a bar to the plaintiff's recovery, and that he cannot recover unless he has proved an express assumpsit. The plaintiff, on the other hand, contends that Morrison is under a legal obligation to pay Berkey. This legal obligation is alleged to be founded on Morrison's covenant with Vickroy to pay the one half of the debts mentioned in the schedule, of which the debt of Thimmel is one, and his parol promise, afterwards, to pay this debt, on the principle that he in fact, by this means, became the actual debtor of Thimmel, with Berkey, as bail for the debt, and that Berkey, having satisfied the debt to Thimmel, is entitled, in his own name, to the present action against Morrison, on the same principle that any surety would have a right to maintain an action against the principal debtor, to recover money paid by the surety for him.

It is very true, that by the article of agreement between Vickroy and Morrison, by which he became the partner of Vickroy in the place of Piper, and in pursuance of which he attained the possession of the iron works, and the property mentioned in the articles, he was bound to pay the one half of the debts mentioned in the schedule. On failure to pay Thimmel, Morrison rendered himself liable, on his covenant to Vickroy, with whom and for whose benefit the contract was made. But although this is plain, yet it is equally clear, upon authority, that Thimmel could sustain no suit for breach of this agreement. Thus, when A sells to B a tract of land encumbered with the lien of judgments, and B, the vendee, expressly agrees with A, the vendor, to pay to C the amount of his judgment, C can maintain no action for breach of the agreement, because he is a stranger to the consideration. And for the same reason, where

A enters into partnership with B, and in consideration of a transfer of one half the effects of B, agrees to pay the debts of B, the creditors of B have no right of action against A, but B alone can sustain a suit for a violation of the agreement. In Crow v. Rogers, *Stra.* 592, the principle that a stranger to the consideration can maintain no action, was expressly ruled. In assumpsit, the plaintiff declares that whereas one John Hardy was indebted to the plaintiff in 70 pounds, upon a discourse between this Hardy and the defendant, it was agreed that the defendant should pay the plaintiff's debt of 70 pounds, and that Hardy should make the defendant a title to a house. Then he avers that Hardy was always ready to perform his part of the agreement, and that the defendant, in consideration thereof, promised to pay the plaintiff.

The defendant demurs; and it was insisted, that there was no consideration moving from the plaintiff to support this promise; and the case of Bourne v. Mason, 1 *Ver.* 6; 2 *Theb.* 457, 527, was cited, where A being severally indebted to B and C, and having a debt due to him from D, C, in consideration that A would permit him to sue D, in his name, promised to pay B. And it was held, that this being a matter of no trouble to the plaintiff, or benefit to the defendant, he was a stranger to the consideration, and could maintain no action.

On the other side was cited the case of Dutton v. Pool, 1 *Ver* 318, 332, where it was held, that assumpsit lay for the daughter upon a provision by the heir to pay her portion, in case the father would not sell timber; and the case of 1 *Roll. Abr.* 32, *pl.* 13, where goods were given to A, on consideration to pay B 20 pounds. And it was resolved B might maintain an assumpsit.

The court gave no opinion. *Adjournatur.* And *Pass* 12 *Geo.* it was moved again: without much debate, the court held the plaintiff was a stranger to the consideration, and gave judgment for the defendant.

The principle of the case just cited was recognized in Blymire v. Boistell, decided at Harrisburg, and not yet reported. It was there held that the vendee of a house and lot in the borough of Carlisle, who promised to pay a judgment creditor, did not render himself liable, at the suit of the creditor. It was held, that the action for a breach of the contract must be brought by the vendor, with whom the contract was made, and not by the creditor, who is neither party nor privy, but a stranger to the consideration. These authorities show that Thimmel could not maintain an action against Morrison; and it would be difficult to show that Berkey, who stands one remove further from the contract between Vickroy and Morrison, can be in any better situation; for it cannot be alleged that there is any other consideration moving from him to support the promise. The agreement is between Morrison and Vickroy, and Vickroy alone can maintain the suit. If Berkey had compelled Vickroy to pay, (as he might,) Vickroy would have had an action

[Berkey v. Morrison.]

for breach of his agreement, to pay Thimmel; or it may be, under the circumstance disclosed, a suit would lie in the name of Vickroy, for the use of Berkey.   But however this may be, we think it clear that no suit can be sustained by Berkey against Morrison, on an implied promise.   And this is not a mere technical objection, because, in that form of suit, Morrison will have the benefit of any defence which he may have against Vickroy; a matter of some importance, as it would appear from the case that Vickroy, who is insolvent, is actually indebted to Morrison in a sum exceeding 3000 dollars.   The defendant in error relies on the case of Hind *v.* Holdship, 2 *Watts* 104; but that case decides, that a promise to pay a debt in consideration of an assignment for the benefit of creditors, is a valid promise.   There, there was not only a benefit to the promisor, but also a detriment to the creditors, whose debts Holdship, in consideration of the assignment, expressly undertook to pay.   It is not the case of an implied, but of an express promise to pay, and in that respect may be distinguished from the case at bar.

I have thrown out of view the evidence in relation to the express promise to pay Thimmel, as it is evident that if such a promise had been made, it was barred by the act of limitations.

As the opinion of the court disposes of the whole case, it is unnecessary to decide the point arising on the act of limitations, which is only material upon the supposition that suit can be sustained in the name of Berkey.

Judgment reversed, and a *venire de novo* awarded.