# Commercial Bank *against* Wood.

An endorser of a draft is a witness for the plaintiff to prove its appropriation by the owner to the payment of a note to the plaintiff and its receipt by the defendant for that purpose, as he swears against his own interest, being liable to the defendant on his endorsement if the plaintiff recover, unless he was released by neglect of notice, in which case he has no interest at all.

In a suit against a bank, a letter addressed to the plaintiff and signed by a third person, but written for him by the president of the bank, stating a deposit of money with the defendants on the plaintiff's account, is evidence for the plaintiff.

So also is a letter written by a different person, but mentioned and referred to in the letter to the plaintiff.

A witness may in his deposition, after setting forth the terms and conditions of a contract for payment of money by the defendant, go on to state that these several payments were agreed to without any contingency or condition, the same having been absolute and certain.

To show the value of an eastern draft at Cincinnati, testimony of a witness that at the date in question eastern drafts payable at sight in Philadelphia were selling in Cincinnati for a premium, as this deponent was informed and believes, is admissible, where the subsequent evidence of the witness shows the defendant took the draft without discount, though it had then some time to run, and the witness would not allow a discount on the ground he had stated.

A witness for the plaintiff may state that he received no value as endorser of a note, and that no measures had been taken against him on it, though the plaintiff gave no evidence on that point, where the witness previously testified that if he endorsed the note it was merely as agent.

If a bank take a draft as so much money and agree to pay the note of the person who delivers the draft, the holder of the note assenting afterwards to such arrangement may recover the amount of the note from the bank, the indebtedness of the maker of the note being a sufficient consideration, and the holder becoming thereby the party beneficially interested and entitled to sue.

A recovery against the holder of the note will in such case discharge the bank from all responsibility to the owner of the draft on its promise to him.

The identity of the note referred to is a question of fact for the jury.

If such draft was received as money, it is of no importance that the drawer failed before the plaintiffs presented their note for payment.

VII. — 12                    H*

[Commercial Bank v. Wood.]

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action of *assumpsit* brought by Richard D. Wood and others, partners under the firm of Wood & Abbott, against The Commercial Bank of Cincinnati, in which a verdict and judgment passed for the plaintiffs below.

The declaration contained various counts alleging that A. G. M'Coy being the holder of a draft drawn by the Commercial and Rail-road Bank of Vicksburg on the Girard Bank in Philadelphia for $4144.27, did at the special instance and request of the defendants negotiate and transfer the same to the defendants and pay them the sum of $275, in consideration whereof the defendants agreed with M'Coy to pay the plaintiffs the sum of $2050. Other counts stated the deposit of money on trust to be paid to the plaintiffs, of a draft drawn by M'Coy and endorsed by A. S. Piatt—that the draft was agreed to be discounted and the money appropriated by the defendants to pay the plaintiffs' note—that M'Coy having money in bank assigned a portion of it to the plaintiffs, &c.

The evidence was voluminous, but the points decided are sufficiently stated in the opinion of this court.

The case was argued by

*C. Ingersoll,* for the plaintiffs in error; and by
*Binney, Jr.* and *F. W. Hubbell,* contra.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned includes a number of bills of exception to evidence admitted by the court below. The first is to the testimony of A. S. Piatt, because, as is alleged, he was incompetent on the ground of interest to testify on behalf of the plaintiffs below, who are the defendants here. It is true that he endorsed the draft drawn by the Commercial and Rail-road Bank of Vicksburg on the Girard Bank in the city of Philadelphia for $4144.27, to the Commercial Bank of Cincinnati, the plaintiffs in error, which they took, as was claimed by the plaintiffs below, as cash, and passed to the credit of Piatt, who acted as such, who acted as the agent and under the instruction of A. G. M'Coy, the owner of the draft, and appropriated a portion thereof to the payment and discharge of a note, which M'Coy says, in his letter of instruction to Piatt, is for the payment of a note of $2057 held by the plaintiffs below against him; but, as appears by the production of the note itself, is for $2072, dated the 29th June 1838, payable six months after date at the Commercial Bank of Cincinnati, Ohio, for which amount under said appropriation this suit was brought. From these facts it would rather appear, if Piatt had any interest in the result of the suit, that he was produced to give evidence against his interest and not in favour of it, which he might well

be admitted to do. It does not appear that he could have had any interest excepting as endorser to the defendants below of the draft, upon which endorsement the defendants might look to him for indemnity if compelled to pay the plaintiffs below in this action, unless they had released him by agreement or neglect to notify him of the non-payment of the draft by the Girard Bank, in which case it is clear he would have no interest at all in the result of this action. He was therefore a competent witness.

The second exception is to the admission of a letter in evidence from Piatt to the plaintiffs below, dated Cincinnati, February 15th 1839, advising them of the appropriation in their favour, by stating that he had that day deposited with the defendants a sum sufficient to pay their claim against M'Coy on his note. This was objected to because the defendants were not parties to it, and therefore ought not to be affected by it. But the letter, though signed by Piatt as if written by him, was actually written by the president of the Commercial Bank of Cincinnati for Piatt; so that it was evidence to show that the Bank knew of the appropriation made in favour of the plaintiffs, and further that they assented to it. We therefore think it was clearly admissible.

The third exception is to the letter of instruction from M'Coy to Piatt, dated Vicksburg, January 28th 1839, enclosing the draft and directing Piatt how to dispose of it and appropriate the proceeds. This was objected to also, on the ground that the defendants were strangers to it, and that it did not appear that they knew anything of it. But it is mentioned and referred to in the letter written by the president of the bank for Piatt to the plaintiffs below, which is the subject of the first exception, and therefore raises a pretty strong presumption at least that the defendants were made fully acquainted with its contents by having seen it when the president wrote the letter for Piatt. We therefore think it was properly received in evidence.

The fourth exception is to what is alleged to be the opinion of Piatt in his testimony, as to the effect of the contract which he made with the Bank, and not as to its terms and conditions, which latter was all that it was competent for him to testify to. It does not appear to us that this exception is well founded in point of fact. The witness has stated his belief in respect to one matter, but gives the ground of it, so that the jury were enabled thereby to judge as to the correctness of his belief. We cannot perceive that he has given any opinion as to the effect of the contract, but can see that he has testified to and stated the terms and conditions of it, and concludes by saying, " which several payments were agreed to be made as aforesaid by said Armstrong, (the president of the Bank), as president aforesaid, without any contingency or condition whatever, the same having been made absolute and certain." This is said to be the opinion of the witness as to the effect of the agreement made with the president of the Bank. It

appears to us, however, to be testimony merely showing what was contained in the agreement made, and that certain things were not contained in it; all which appears to be unexceptionable and right.

The fifth exception is to Piatt's testimony in relation to the value of eastern drafts at Cincinnati, at the time he disposed of the draft on the Girard Bank to the defendants below, as he knew nothing but what he had from hearsay. The part of the testimony here objected to is in the following words : " Eastern drafts, at the date of the transaction, payable at sight in Philadelphia, were selling in Cincinnati for a premium, as this deponent was informed and believes." This, though hearsay, was admissible when taken in connection with the residue of the testimony of the witness, who thereby showed that the defendants below took the draft without any discount, notwithstanding it had then some time to run before it would become payable. The evidence excepted to went, therefore, to show the reason why the defendants took the draft upon such terms, and as so much money, without discount; and the ground upon which the witness acted, and would not let them have it at a discount, as he believed from the information which he had on the subject that it was worth, being a draft on Philadelphia, a premium equal at least to the usual discount on it for the time it had to run before maturity.

The sixth exception is to that part of Piatt's testimony in which he says, " No notice of dishonour has been served on him; neither has he to this day received through any post-office, or any other channel, official notice of the dishonour of said draft, in order to fix him as endorser; and no suit or any other measure has been taken, to his knowledge, to compel him to pay the same." The objection to its being admitted was, that it was irrelevant, inasmuch as the defendants had offered no testimony tending to prove that a notice had been delivered or sent to him with a view to render him liable as an endorser on the draft. But the witness had testified previously that if he did endorse the draft, of which he was not certain, it was done merely to pass the legal title to it to the defendants; for the understanding with the defendants was that he was not to be responsible on it as an endorser or otherwise—that he acted in the matter merely as the agent of M'Coy, the owner of it. Now the testimony excepted to, in some degree, went to prove that such was the agreement and understanding, otherwise a notice of the non-payment of the draft would most likely have been given or sent to the witness. We therefore perceive no error in the admission of this part of the testimony.

The seventh exception contains nothing except what has been already noticed and disposed of in the previous exceptions.

The remaining errors, five in number, purport to be exceptions to the charge of the court to the jury. The two first of them,

however, do not appear to have any foundation in point of fact, for the matter set forth in them as excepted to is not contained in the charge. They therefore cannot be noticed and passed on by this court.

The last of the remaining errors will be considered first, which is, that the court erred in putting the cause to the jury upon two questions of fact. That part of the charge here alluded to is in the following words, to wit, " Did the Bank (meaning the defendants below) receive from M'Coy money or its agreed equivalent, under an agreement to pay notes given by M'Coy to certain persons, his creditors, among whom were the plaintiffs? 2. Was the note of M'Coy to the plaintiffs for $2072, dated June 29th 1838, at six months, *the* note in the view of the parties to that arrangement?" The facts involved in these questions were doubtless all-important, and upon their being found by the jury to exist depended mainly the right of the plaintiffs below to recover. Being thus material to the issue and the evidence powerful, if not irresistible, to prove their existence, it was certainly right in the court to present them to the consideration of the jury; and it might have gone still further, and have instructed the jury in express terms that if they believed that the Bank took the draft of M'Coy, or Piatt his agent, as so much money, and agreed to pay the note of $2072 which the plaintiffs held on M'Coy, the plaintiffs were entitled to recover the amount thereof from the Bank. If the Bank took the draft with the $206 mentioned by Piatt in his testimony as cash, upon an agreement to pay to the plaintiffs the note of $2072, as the evidence seems to show very satisfactorily that it did, the plaintiffs, by assenting afterwards to the arrangement or agreement made in this respect by Piatt on behalf of M'Coy with the Bank, become entitled to receive the amount of the note from the Bank. But admitting all this to be true, it has been objected that the plaintiffs below were not entitled to recover, because there was no contract made by them with the Bank, or by any other, to which they can be considered under any view a party; but even if they could, it is further objected that no consideration moved from them to support a promise in their favour—that they neither released their claim upon M'Coy, or parted with any right whatever which they previously had, in consideration of the promise said to be made by the Bank for their benefit. But then it must be recollected that the draft and bank-notes which the Bank took of Piatt as money, were before and until then the property of M'Coy, who had a perfect right to dispose of the same as he pleased; that being indebted at the time to the plaintiffs and desirous to pay them, he, for the purpose of doing so, transferred his right of property in the draft and the bank-notes to the Bank, which the Bank agreed to receive as money in trust for the plaintiffs, to the amount of their note upon M'Coy. The indebtedness of M'Coy to the plaintiffs was a suffi-

[Commercial Bank v. Wood.]

cient consideration for the creation and support of the trust thus created in their favour, and the right to the use of the money passed thereby to them, so as to entitle them to demand and receive it from the Bank. They had the right and could, if they had chosen, have released the Bank from its promise to satisfy their demand owing to them by M'Coy, so that neither they nor M'Coy would have had any claim upon the Bank afterwards. They became by the contract made with the Bank by Piatt as the agent of M'Coy, the party beneficially interested therein, and according to the principle laid down in *Blymire* v. *Boistle*, (6 *Watts* 182), entitled to maintain this action. Assumpsit for money had and received has been maintained by a legatee to recover a legacy from the executor, where the latter owned it lay ready for the plaintiff whenever he would call for it, *Bull. N. P.* 131; and why may not such action be maintained in the present instance by the plaintiffs against the Bank, seeing it has, according to both the evidence and the verdict of the jury, acknowledged or owned that it had the money which M'Coy owed the plaintiffs in its possession, lying ready for them whenever they would call for it. It has also been objected, seeing the contract was made with M'Coy or his agent, and has not been performed by the Bank, that it is liable to be sued by M'Coy, the promisee, and therefore ought not to be held liable to an action at the suit of the plaintiffs, as it would be unreasonable to make it answerable more than once for a breach of the same promise. But it is very obvious that the recovery here by the plaintiffs below will discharge the Bank from all responsibility to M'Coy for a breach of its promise made to him, so far as the debt then payable by him to the plaintiffs was embraced in it. *Salk.* 28; *Bull. N. P.* 133.

The last error but one, numbered 5, seems to be connected with the second question of fact, mentioned in the last error assigned, which has just been discussed; I will therefore take it next. It is, that the court charged the jury that the plaintiffs might recover, although the note presented for payment was not the same described, (meaning the same described in M'Coy's letter of instruction to Piatt). This, it must be observed, was not the charge of the court to the jury, but the contrary of it; for the language of the court to the jury on this point is, "Was the note of M'Coy to the plaintiffs for $2072, dated June 29th 1838, at six months, *the* note in view of the parties to that arrangement?" (meaning the agreement, just before mentioned, to pay the notes given by M'Coy to certain persons, among whom were the plaintiffs;) thus intimating plainly to the jury, that unless it were the same the plaintiffs were not entitled to recover. It is true that it did not accord in amount with the note mentioned in the letter of instruction; it appeared to be fifteen dollars more; but it was the only note payable at the time which the plaintiffs held on M'Coy. They held another for $2057.28, nearer in amount than the sum

mentioned in the letter of instruction, which was $2057; but then it had nearly six months to run before it would become payable, whereas the notes mentioned in the letter are said to be protested for non-payment at that time, and, as M'Coy supposed, remitted by the Bank to the owners or payees. The evidence was powerful, therefore, if not conclusive, to show that M'Coy intended the note of $2072, presented and claimed by the plaintiffs below, but mistook the amount of it. The court below were, therefore, clearly right in submitting the question to the jury as it did.

The only error assigned remaining to be noticed is the 4th according to number, which alleges that the court erred in charging the jury that the failure of the Vicksburg Bank, and protest of their draft before the presentation by the plaintiffs of the note they held, did not affect the plaintiffs' right to recover. The charge of the court in regard to this point was, " that if the Vicksburg draft was bought by the defendant and received by it as money, and as such was received by it on deposit in the account opened with Piatt, it was of no importance that the Vicksburg Bank failed before the plaintiffs presented their note for payment to the defendant." We can perceive no error in this; for the plaintiffs having been informed by letter, by the mail, immediately after the deposit was made for their benefit, were left, if they chose, to trust and look to the defendant below alone for payment of their claim or debt against M'Coy. It does not lie with the Bank, after having induced the plaintiffs, by its promise to pay their note on M'Coy, to give up looking after M'Coy for payment, as otherwise they might and probably would have done, to say that it will not pay the plaintiffs, because the drawer of the draft which formed the consideration for its promise became insolvent and unable to pay the draft, in consequence of a failure on the part of the Girard Bank, the drawee, to accept and pay the same. The future ability of the Vicksburg Bank and M'Coy respectively to make the draft good, in case the Girard Bank failed to pay it at maturity, was a matter of consideration entirely for the defendant below, and ought to have determined it not to make an absolute and unqualified promise to pay the plaintiffs, unless it had resolved to take upon itself all the risk that might have to be encountered by doing so. To hold otherwise would be making the promise of the Bank to pay the plaintiffs *conditional*, which would be directly contrary to the express terms of it, and placing, possibly, the plaintiffs in a worse condition than they would have been if the promise in its terms had been conditional merely, or never made at all. But it is clear beyond the possibility of doubt that the Bank (the defendant) has sustained no injury by the delay of the plaintiffs to present the note which they held on M'Coy to it for payment, before the failure or insolvency of the Vicksburg Bank. On the contrary, whatever delay there was on the part of the

plaintiffs to do so may have been a benefit to the Bank, (the defendant), as it was an indulgence to it and it alone.

Judgment affirmed.