# Greene County, for use, *v.* Southern Surety Co., Appellant.

*Contracts — Person not party to contract — Right of action — Donee or creditor beneficiary—Trusts, agency, etc.*

1. Where a person not a party to a contract attempts to bring an action on it, he must show that the contract was made for his benefit; the question then arises as to whether our rule of law permits him to enforce the contract by a direct action at law.

2. If the contract is for the benefit of the promisee or, in other words, where the third person is a creditor beneficiary, such third person cannot recover.

3. In the case of a donee beneficiary, or where the contract is made for the sole benefit of a third person, there may be a recovery by such third person only where the consideration for the promise is a transfer of property or money to the promisor, or where unusual circumstances are present.

4. There are several classes of cases, such as suits against an assignee for the benefit of creditors or suits by an undisclosed principal on a contract made by his agent, which are usually referred to as exceptions to the general rule, but they are really governed by other principles such as trusts, agency, etc.

*Contracts—Sealed instruments—Actions—Parties—Pleadings—Covenant and assumpsit.*

5. A person not a party to a sealed instrument cannot sue thereon; and this is the case although the distinction between pleadings in covenant and assumpsit have been abolished.

*Principal and surety—Construction contracts—Bond—Materialmen—Public contracts—State highways—Actions—Parties—Acts May 31, 1911, P. L. 468; May 10, 1917, P. L. 158, and May 16, 1921, P. L. 650.*

6. As a general rule, a surety on a bond given for the performance of public or private contracts cannot be held liable to third persons who furnish labor and materials, though the obligation requires the contractor to pay for labor and materials.

7. Where a bond is given by a contractor to a county for the construction of a portion of a state highway under a contract awarded by the State Highway Department, a person furnishing material to the contractor for the construction of the highway under the contract has no right of action against the surety on the bond, either in his own name, or in the name of the county for his use.

8. It is only where a statute or ordinance so provides, that a materialman may sue on the bond given to secure the performance of public work.

9. Section 13 of the Act of May 31, 1911, P. L. 468, as amended by the Act of May 16, 1921, P. L. 650, does not give a right of action to a materialman to sue on a bond given to a county to secure the performance of a contract to build a state highway. In such case the county cannot avail itself through the materialman as a use-plaintiff to hold the surety liable.

10. The steps required of a materialman under section 13 of the Act of May 31, 1911, P. L. 468, must be taken as a prerequisite of his right to sue.

11. The Act of May 10, 1917, P. L. 158, relating to bonds for contracts for the erection of public buildings, does not apply to a contract for the construction of a state highway.

*Statutes—Modification of common law—Enforcement.*

12. Where a statute effects a modification of a rule of the common law, it will be enforced only to the extent of the modification intended.

Argued September 30, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 160, March T., 1927, by defendant, from order of C. P. Allegheny Co., April T., 1926, No. 3062, making absolute rule for judgment for want of sufficient affidavit of defense, in case of Greene County to use of Crescent-Portland Cement Co. v. Southern Surety Co. Reversed.

Assumpsit on bond.

Rule for judgment for want of sufficient affidavit of defense. Before MOORE, J.

The opinion of the Supreme Court states the facts.

Rule absolute. Defendant appealed.

*Error assigned* was order, quoting record.

*Joseph Stadtfeld,* with him *Morris G. Levy,* of *Levy & Harrison,* for appellant.—Neither under the terms of the contract nor of the bond is any right of action given against the surety to the materialmen: First Methodist Episcopal Church v. Isenberg, 246 Pa. 221; Robertson v. Indemnity Co., 268 Pa. 309; Erie v. Diefendorf, 278 Pa. 31; Com. v. Construction Co., 284 Pa. 64; Lancaster City v. Surety Co., 192 Pa. 452.

If it were intended to protect labor and materialmen, the county should have required an additional bond as provided under the Act of May 10, 1917, P. L. 158.

*Simon T. Patterson,* of *Wallace, Patterson & Collin,* for appellee.—The highway in question was not a county road constructed by a contract under the County Road Act of May 11, 1911, P. L. 244. It was a state highway constructed under the law with reference to state highways, under the plans and specifications of the State Highway Commissioner, who awarded the contract, and approved the bond. All that the county did or had to do was to pay the expenses; and even that gave the county no right, title or interest in the highway. It matters not that the department of highways delegated to the

County of Greene the actual signing of the contract. The highway was and remains a state highway.

OPINION BY MR. JUSTICE KEPHART, December 5, 1927:

This action was originally brought by the Crescent-Portland Cement Co. in its own name against defendant surety company on a bond given to the County of Greene. Later, plaintiff, following a suggestion of the court below, amended the statement of claim so that the action was brought in the name of Greene County to the use of the real plaintiff. The claim arose out of a contract made by the county with Samuel Gamble Company for the improvement of State Highway Route No. 109. The contractor failed to pay the use-plaintiff, a materialman, and this action was brought by it against the surety. The use-plaintiff relied on the terms of the bond and the various statutes governing contracts for the improvement of state highways; the court below held, in an opinion by Judge MOORE, that the action was properly begun in the name of Greene County for the use of plaintiff, and that, though the use-plaintiff was not a party to it, the bond inured to its benefit. Later, an additional question of law was raised and decided adversely to defendant in an opinion by Judge DREW. We do not pass upon this question. Judgment was entered for the full amount of the claim, and this appeal followed.

So much of the bond as it is necessary to consider, reads: "That we, Saml. Gamble Company,......'Principal,' and Southern Surety Co.......called the 'Surety,' are......bound unto the County of Greene in the...... sum of......to be paid to the said County......Whereas, the......'Principal' has entered into a contract with the......County......for the improvement of a highway,......Now,......the condition of this obligation is......that......the......'Principal'......shall save harmless the County of Greene from......any liability for payment of wages due or materials furnished......

and shall well and truly pay for all material furnished
......[for] the......highway."

Plaintiff contends the "principal" and "surety" were
engaged to the promisee, the county, to pay the ma-
terialmen for material furnished, and that, in the event
of the contractor defaulting, the materialman, as bene-
ficiary, has a right of action on the bond. Whenever
one not a party to a contract attempts to bring an action
upon it, two questions arise: (1) Does the agreement
confer upon him any rights, or, in other words, was
it made for his benefit; and (2) If so, does our rule
of law permit him to enforce these rights by a direct
action at law.

If it appears that the contract was not made for
the benefit of the third person, then he has no rights
to be enforced: Freeman v. P. R. R., 173 Pa. 274;
Crown Slate Co. v. Allen, 199 Pa. 239.

It has been judicially determined that in surety con-
tracts, one in the position of this plaintiff is not a party
interested, and consequently the contract was not made
for his benefit. In Cummings v. Klapp, 5 W. & S. 511,
a bail-piece given to a constable by K. to pay the amount
of an execution in his hands can only be enforced by an
action in the name of the constable, and not in the name
of the plaintiff in the execution. In Campbell v. Lacock,
40 Pa. 448, C. guaranteed B's undertaking to pay all
the firm debts which he had purchased from A. D., a
firm creditor, sued the surety. It was held that there
could be no recovery since the promise was not made
to him, nor for his use or benefit. No consideration
moved from him and nothing was received in trust;
there was no privity. It is rather strange that, if the
suit was good as against B. it would not be good as
against C.

These cases, although not directly building contract
cases, indicate the trend of the early law, but in build-
ing contracts we have stood very firm against recovery
by materialmen and laborers against the surety, unless

governmental regulations intervene. If such contracts relate to private property, the promise operates to protect the owner from liability to satisfy liens given by law to workmen and materialmen. The promise is in relief of the promisee, the owner. The law gives no right to lien by laborers and materialmen, where the owner of property in a contract is a municipality, and it may be thought that the promise was primarily for the benefit of these creditors of the contractor. To some extent this is true, but a more important reason exists for a contrary view,—the municipality is vitally interested in the completion of the work according to plans and specifications, and if suit is permitted by materialmen and others, the bond may be exhausted, leaving the municipality without security for an uncompleted job. It is also interested in being protected in the future if it develops the work has not been done according to the plans. An apparently finished job may be handed over, but this does not end a surety's liability. In road work, the first severe winter may develop inferior workmanship or materials furnished. Unless otherwise provided, the bond must answer for this default. Suretyship is then a continuing obligation unless, the contract otherwise provides. For the breach of covenants in a bond, enforcement is by an action on the bond to recover the penalty; it could not be for the wages or the price of the materials. The amount of recovery is payable, not to the materialmen or the workmen, but to the obligee.

To illustrate this, see the cases of Lancaster v. Frescoln, 192 Pa. 452; Lancaster v. Frescoln (No. 2), 203 Pa. 640; First M. E. Church v. Isenberg, 246 Pa. 221. In this last case, A. contracted with B. to build a church and deliver a bond, conditioned to pay all materialmen and laborers; the surety was not liable to the materialmen. See also Board of Education v. Mass. Bonding & Insurance Co., 252 Pa. 505. Our latest case is Erie v. Diefendorf, 278 Pa. 31, where the bond provided that "the contractor shall well and truly pay for all

materials that shall be used in said work, and also pay in full for all workmen employed by him on said work." This, we held, was insufficient to give the materialman the right to sue. It may thus be stated as a general rule that the surety on a bond given for the performance of public or private contracts cannot be held liable to third persons who furnish labor and materials, though the obligation requires the contractor to pay for labor and materials.

If we concede, as argued, that this contract was partly for the materialman's benefit, then we must consider whether the beneficiary has a legal right to maintain an action on the contract, and in deciding this question, we must not confuse the rights which beneficiaries have in third party contracts with rights arising where the title to the property passes to a third person, or where property is held in trust.

There are two types of cases commonly referred to as promises for the benefit of third persons: (1) promises where the promisee has no pecuniary interest in the performance of the contract, his object in entering into it being the benefit of third persons; and (2) promises where the promisee seeks indirectly to discharge obligations of his own to a third person by securing from the promisor a promise to pay this creditor. In the first class of cases, the third person is generally described as a "donee" beneficiary; and in the second as a "creditor" beneficiary.

The general rule of the common law in this state, that no one not a party to an obligation can maintain an action thereon in his own name, has been subject to some modification, as applied to "donee" or "sole beneficiary" contracts. It has been stated in Blymire v. Boistle, 6 Watts 182, 183, 184, "if one pay money to another for the use of a third person, or, having money belonging to another, agrees with that other to pay it to a third, action lies by the party beneficially interested." To further illustrate this proposition, the

opinion further states, (p. 184), "Where one person contracts with another to pay money to a third, or to deliver some valuable thing, and such third party is thus the only one in interest, he ought to possess the right to release the demand or recover it by action." In that case, A., who owed B., conveyed to C. a lot of ground on agreement that C. would pay A.'s debt to B. B. sued C. on the promise, and was denied recovery. It is to be noted that property was transferred and the money to come from it was to pay the debt. It may be said that the case holds only that a creditor beneficiary cannot recover. But the influence of this decision on donee or sole beneficiary cases as well has been felt throughout all our litigation.

Unless the transaction is accompanied by a transfer of property or funds to the promisor, or by unusual circumstances, there are very few instances where recovery has been permitted to a donee beneficiary. Of course there are the typical cases of life insurance policies and mortgage clauses in fire insurance. Some other cases noted as exceptions may be seriously questioned as being such. Edmundson's Estate, 259 Pa. 429, is really placed on a transfer of property. In Tasin v. Bastress, 284 Pa. 47, W. & F. agreed to discontinue litigation against B. in consideration of the latter's agreement to pay the outstanding indebtedness of $36,-000, which plaintiffs owed to certain financial institutions. B. having failed to comply, the parties liable on the notes to the financial institution brought six separate suits in their own names, claiming that the compromise agreement was for their benefit; it was held that where the promisor, in compromise of litigation already instituted, agrees with the promisee to pay or deliver something to one who is merely a donee beneficiary, the latter may himself maintain an action upon the promise. This decision created a new class of exceptions, and its effect is limited to that class.

In Brill v. Brill, 282 Pa. 276, the question was one of public policy. The father, admitting an illegitimate child to be his own, was in duty bound to care for it, and his bond in whatever amount necessary should be sustained against him as a matter of public policy. Our statutes cover care of children born out of wedlock, and putative fathers should not be permitted to play fast and loose with their obligation to care for and educate their illegitimate children.

It may be as Prof. Williston (who places Pennsylvania in the doubtful column as to enforcing such promises) observes,—that our rule results from too close adherence to the earlier English distinctions, refusing recovery by the beneficiary: Williston on Contracts, sec. 368, p. 678. But the undoubted weight of authority follows the principles laid down in Blymire v. Boistle, supra: Morrison v. Beckey, 6 Watts 349; De Belle v. Penna. Insurance Co., 4 Wharton 68; Campbell v. Lacock, 40 Pa. 448; Adams v. Kuehn, 119 Pa. 84; Lancaster v. Frescoln, 192 Pa. 452, 456; Lancaster v. Frescoln (No. 2), 203 Pa. 640; Sweeney v. Houston, 243 Pa. 542; First M. E. Church v. Isenberg, 246 Pa. 221.

One difficulty in enforcing a promise exacted for the sole benefit of a third person comes from the fact that the beneficiary is not a party to the contract, and, ordinarily apart from statute or some special principle governing this class of cases, he cannot maintain an action. Moreover, the promisee, though entitled to sue on the promise on ordinary principles of contract, has suffered no pecuniary damages by the failure of the promisor to perform his agreement, and, it would seem, cannot recover substantial damages. Even if it be granted that the wrong of the defendant, not the injury to the plaintiff, furnishes the measure of damages, the beneficiary gains nothing thereby; for it is no easier to find a principle requiring the promisee to hold what he recovers as trustee for the beneficiary than to find

a principle allowing a direct recovery by the beneficiary against the promisor: Williston on Contracts, sec. 357, p. 683.

Other objections to recovery are as follows: The promise is for the relief of the promisee, from whom the consideration moves; the subject-matter of the latter may be in the possession of the promisor, when he agrees to perform some act for the benefit of a third person, and, as no fund, property or means of payment is transferred to the promisor, no action should be permitted; no title, equitable, or otherwise, or interest to such fund or property, passes to the third person as beneficiary. He is a stranger to the contract, having paid no part of the consideration moving to the promisor. The objections omit consideration of the lack of an enforceable pecuniary interest in the promisee. In all the exceptions to the general rule, there is primarily considered the basic or underlying promise from one to another, to render some service to a third person. To this is added an additional circumstance which increased the promisor's estate, or means were placed with him to accomplish the promise; for illustration, a transfer of property or fund to the promisor.

Whatever the objections to recovery by the sole beneficiary, they are insufficient to overcome the undoubted merit and justice of his cause. There is no good reason why A., for a consideration, could not contract with B. that the latter should perform some service for C., and C. ought to be able to enforce the promise. We have, to some extent, eliminated the idea of consideration moving from the beneficiary. There is a moral obligation, and why a legal obligation does not exist is difficult to understand. If a lack of privity of contract seems to stand in the way, it should not affect the equitable right, and, as Judge SIMPSON points out in Tasin v. Bastress, supra, with us equity is often administered in courts of law through actions of assumpsit. But our decisions are too numerous the other way,

and, it would seem the legislature is the only authority that could possibly change the rule. The rule is one of substantive law and not merely one of procedure.

There are cases where property or money is delivered to the promisor, who undertakes to deliver it, or its proceeds, to a third person, or use it for his benefit. These have been called exceptions to the general rule; they really are cases of trusts, but because of the liberality of our procedure in administering equity through actions of assumpsit, our treatment of these cases has been misunderstood and sometimes confused. Assignments for the benefit of creditors, as in Hind v. Holdship, 2 Watts 104, have been held to be irrevocable trusts from the moment the deed was delivered. The following cases illustrate: Justice v. Tallman, 86 Pa. 147, having many elements of debtor and creditor cases; Commercial Bank v. Wood, 7 W. & S. 89, 93; Torrens v. Campell, 74 Pa. 470; Hostetter v. Hollinger, 117 Pa. 606; Sparks v. Hurley, 208 Pa. 166; McBride v. Western Penna. Paper Co., 263 Pa. 345, 349.

Another class of exceptions is where property has been transferred to the promisor on his agreement to pay the debts or accounts to others. There is no trust or equitable charge as to such property; it is transferred outright, and the promisor may use it as he sees fit. He only engages to pay the beneficiaries, usually creditors, and this payment comes from any means at his command. A familiar illustration is where property has been devised, the devisee to make specified payments to others named as legatees. The right of action against the devisee accrues to the legatees: Dreer v. Pennsylvania Co. for Insurance, 108 Pa. 226. Cases illustrating a transfer of property and where one buys the stock of a tradesman and undertakes to fill the contracts and pay the debts of the vendor, are: Beers v. Robinson, 9 Pa. 229; Bellas v. Fageley, 19 Pa. 273; Vincent v. Watson, 18 Pa. 96; Torrens v. Campbell, 74 Pa. 470; White v. Thielens, 106 Pa. 173. It may be the distinction

between the consideration here involved that enables suit, and one where suit is denied, is the augmentation of the promisor's estate.

The second type of cases are commonly known as creditor beneficiary cases: Blymire v. Boistle, supra. It was there stated: "Where the contract is for the benefit of the contracting party, and the third person is a stranger to the contract and consideration, the action must be by the promisee......But when a debt already exists from one to another, a promise by a third person to pay such debt, being for the benefit of the original debtor, and to relieve him from the payment of it, he ought to have a right of action against the promisor for his own indemnity; and if the promisor were also liable to the original creditor, he would be subject to two separate actions at the same time, for the same debt, which would be inconvenient and might lead to injustice."

Prof. Williston speaks of the right of a creditor as derivative because of the enhancement of the promisee's property through being relieved of the obligation to pay a debt. We may add that a creditor should always have the right to avail himself of any security or right his debtor holds from a third person, which may be made applicable to the payment of the debt. The propriety of such rule is recognized when property is sold, subject to a mortgage, but these cases are usually treated in a class by themselves. However, it seems that our authorities are opposed to such a rule for the reasons stated in Blymire v. Boistle, supra. See Ramsdale v. Horton, 3 Pa. 330; Campbell v. Lacock, 40 Pa. 448; Robertson & Co. v. Reed, 47 Pa. 115; Kountz v. Holthouse, 85 Pa. 235; Adams v. Kuehn, 119 Pa. 76 84. The only case permitting a recovery is Howes v. Scott, 224 Pa. 7, 10, and it may be dismissed as decided on the ground of a transfer of property. Care should be taken not to confuse debtor and creditor cases with

novation, and cases of orders drawn by A. on B. to pay C., which are accepted.

We have thus reviewed at length the question of the right of a third person to enforce a promise made for his benefit by a direct action at law. Our conclusions may be summarized as follows: Under the general rule stated in Blymire v. Boistle, supra, and followed for almost a century, where the contract is for the benefit of the promisee, or, in other words, where the third person is a creditor beneficiary, there can be no recovery. In the case of a donee beneficiary, or where the contract is made for the sole benefit of a third person, there may be recovery only where the consideration for the promise is a transfer of property or money to the promisor, or where unusual circumstances are present. There are several classes of cases,—such as suits against an assignee for the benefit of creditors (Hinds v. Holdship, supra) or suits by an undisclosed principal on a contract made by his agent (Hubbert v. Borden, 6 Wh. 79),—which are generally referred to as exceptions to the general rule, but they are really governed by other principles such as trusts, agency, etc. Even if we were to assume this to be a donee beneficiary contract, there could be no recovery because no money or other property has been placed in the hands of the promisor, and the case does not fall under any of the recognized exceptions to the general rule.

There is one other reason why this plaintiff cannot maintain a suit on the bond. This is an action on a sealed instrument, and in Strohecker v. Grant, 16 S. & R. 237, 241, we held that, whatever the rule might be in assumpsit, there could be no recovery in covenant by one not a party to the instrument. This rule was followed in De Bolle v. Penna. Ins. Co., 4 Wh. 68. See also Mississippi R. R. Co. v. Southern Assoc., 8 Phila. 107, 108. It is true that in Brill v. Brill, supra, the court below said that the rule fell when the distinction between pleadings in covenant and assumpsit was

abolished.  As we pointed out above, that case was decided purely upon the ground of public policy.  Furthermore, we cannot agree that the proposition that one not a party to a sealed instrument cannot sue upon it rests entirely upon rules of pleading.  Prof. Williston says (sec. 401) that "none of the earlier cases which allowed a right of action to one who was not a party to the contract related to contracts under seal, and where statutes have not taken away the importance of the distinction between sealed and parol contracts the rule that one who is not a party to a contract under seal cannot sue upon it is still applied to contracts [either] to benefit or pay a debt to a third person." In this State, speaking generally, a seal retains its common law force, and we must conclude that the rule remains unchanged.

In contracts for the performance of public work, the state, or its subdivisions, may, as a matter of public policy, by statute or ordinance, require bonds to protect those furnishing labor and material to such work: Philadelphia v. Stewart, 195 Pa. 309.  Where a bond is given for public work in pursuance of a statute or ordinance for the protection of laborers and materialmen, those who come within the protected class may sue the surety on the bond: Phila., to use, v. McLinden, 205 Pa. 172, 176; Phila. v. Stewart, supra; Phila. v. Harry C. Nichols Company, 214 Pa. 265; Phila. v. Neill, 206 Pa. 333; Phila. v. Neill & Lincoln Savings & Trust Company, 211 Pa. 353, 355; Phila. v. Wiggins, 227 Pa. 343; H. H. Robertson Co. v. Globe Indemnity Co., 268 Pa. 309; Bowditch v. Gourley, 24 Pa. Superior Ct. 342, 344.

But it must appear that the bond was given under such ordinance or statute for the protection of third parties; Lancaster v. Frescoln, 192 Pa. 452; Lancaster v. Frescoln, (No. 2), 203 Pa. 640.  Here the bond was conditioned that the contractor "shall well and truly pay, or cause to be paid, the wages of all laborers......

and also all materialmen for material." It was given under a special ordinance that required no bond. In an action against the surety, it was held that it could not be brought within the terms of another municipal regulation requiring a surety to protect others. The obligation of the bond could not be extended beyond the plain import of the words used: Erie v. Diefendorf, supra.

Does section 13 of the Act of 1911, P. L. 468, as amended by the Act of May 16, 1921, P. L. 650, give a right of action? It reads: "All work......done under the provisions of this act......shall be according to the plans and specifications......prepared......by the State Highway Department. Every person...... awarded any contract for the construction......of any state highway......under the provisions of this act ......shall furnish a bond......conditioned that the contractor......shall save harmless the Commonwealth of Pennsylvania......and shall well and truly pay for all material furnished......about the......said highway; and any person......who has furnished labor or materials used in the construction or improvement of any state highway......and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the Commonwealth......If no suit should be brought by the Commonwealth......within six months from the completion ......the person......supplying the contractor with labor and materials shall, upon application therefor and furnishing affidavit to the State Highway Department that labor and materials......have been supplied by him......and that payment......has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be and are hereby authorized to bring suit, in the name of the Commonwealth of Pennsylvania, for his or their use and benefit against said contractor and his sureties."

The use-plaintiff urges that Greene County, in contracting to improve state property (state highway), simply acted for the Commonwealth, inasmuch as the latter prepared the specifications, contract and bond under which the road was improved, and that legislation governing state contracts for road construction should apply to similar contracts of the county. No question of a state agency is pretended. Appellee's position presents an extended view of the rights springing from such obligation. We must not only import an unnamed promisee into the bond, but through such promisee enforce plaintiff's supposed right. It will be noticed the Commonwealth is neither a party to the contract, nor is it an obligee in the bond; nor is there any recital in the bond that it is given for the benefit or protection of the Commonwealth, and the state is relieved of any liability whatsoever on the contract.

The county was empowered to do the work under the Act of June 12, 1919, P. L. 450. It authorized counties to improve state highways, and borrow money for that purpose, subject to the provision that no state highway may be improved unless it (the project) has been submitted to and approved by the State Highway Department.

While section 13 of the Act of 1911, amended by the Act of 1921, shows a clear legislative intention to make sureties liable for unpaid laborers and materialmen on bonds furnished to the State by a contractor improving state highways, the bond was for the protection of the Commonwealth first, and secondarily those who were legislated into a privity of contract in the method pointed out by the act. A state may create subordinate municipal subdivisions as government entities with limited powers, but, unless otherwise ordained in matters of contract within these powers, they act as independent authority. Laws enacted for the benefit of the one do not embrace the other, nor do they create relations which exist only through contract; the vol-

untary act of one performing a service in which the other may be interested neither brings the one so performing within the acts, nor would such acts create a contract relation. In planning and supervising the work, the state merely protected its property.

The contract was with the county; it assumed all liability. The Act of 1919 is wholly insufficient to raise any relation between the Commonwealth or the materialmen. The contract and bond did not do so, and to extend the surety's liability beyond the limit clearly known to be set by the law when the bond was executed, would be an extension of its language beyond its plain import, and in opposition to all our cases. The acts did not change the common law in this respect. When a statute affects a modification of a rule of the common law, it will be enforced only to the extent of the modification intended. "Legislative enactments are to be expounded as near to the use and reason of the prior law as may be, when this can be done without violation of its obvious meaning; for, say the cases, it is not to be presumed the legislature intended to make any innovation upon the common law, further than the case absolutely requires." Cadbury v. Duval, 10 Pa. 265, 270; Davidson v. Bright, 267 Pa. 580, 589.

Much reliance is placed by appellee on Robertson Co. v. Globe Indemnity Co., supra, and the same parties in 77 Pa. Superior Ct. 422. The bond in these cases was to the Commonwealth in the terms of section 13 of the State Highways Act of May 31, 1911, P. L. 468. We held that the statute provided for an agreement to pay the workmen and materialmen, and in the bond it was so agreed. It was a statutory obligation. While the name of the materialman was not written in the bond, it was, by force of the act, legislated in with the same effect as in Commonwealth v. National Surety Co., supra. The bond before the Superior Court was in the name of the Commonwealth for the use of Wash-

ington County, or any other person interested. There were no omitted links connecting ultimate liability.

We must hold that the county, through the use-plaintiff, cannot, under the circumstances, avail itself of the Acts of 1911 and 1921 to hold the surety liable. The Act of 1919 did not contemplate it; and where political subdivisions avail themselves of laws enacted for the protection of the State, it must be done by their writings.

Section 13 of the act requires materialmen to take certain steps before suit is brought. There is no averment that these steps were taken, though we find the contract and bond certified. These steps were necessary to the case. The omission in the pleading may be amended, and attention is called to it for consideration in future cases. The court generally will not reverse where the pleadings may be amended. See Russell's Estate, 284 Pa. 164.

The Act of May 10, 1917, P. L. 158, does not apply, as, by the title, it is an act requiring a bond in and about the erection, alteration, addition and repair of public buildings. While this act, and its amendment of May 6, 1925, P. L. 546, may indicate the public policy of the State to avoid the common law rule as it relates to materialmen, it must, as must all acts, relate to the subject-matter dealt with.

The judgment of the court below is reversed and is here entered for the defendant, costs to be paid by appellee.