## National Theatre Supply Co. v. Berman.

*Edward N. Polisher*, for plaintiff; *Sigmund H. Steinberg*, for defendant.

LEWIS, J., November 17, 1931.—This action is based upon a written agreement executed by the defendant, Berman, whereunder he agreed to purchase from Stiefel "the real estate situate at the N. E. Corner Ridge and Leverington Avenues, Philadelphia, upon which is erected the . . . Roxy Theatre building [operated by the Roxborough Amusement Co.], together with all the machinery, equipment, fixtures and other appliances . . . in connection with the operation of the said building as a motion picture theatre. . . ."

Berman agreed, in consideration of mutual covenants, to advance to a corporation thereafter to be formed, for the purpose of operating the theatre, "if, as and when necessary, the sum of $8006.30, and pay for the obligations" (among them the money due the National Theatre Supply Co.), set forth in a schedule attached to the agreement "heretofore contracted by the present operators [Roxborough Amusement Co.] of the theatre."

Plaintiff avers that on December 7, 1929, when the agreement referred to was entered into, there was an indebtedness on the part of the Roxborough Amusement Company to plaintiff for equipment and supplies furnished by plaintiff; that said indebtedness was included in the debts of the Roxborough Amusement Company, referred to in the agreement above recited: it avers that defendant defaulted in his agreement to make the payment to the "operating corporation," as provided therein, and, in this action, claims defendant is liable to it for the payment of that indebtedness. An affidavit of defense raising questions of law has been filed on behalf of the defendant and the principal question for determination may be stated to be as follows: Is the plaintiff, under the sealed agreement between Berman and Stiefel, vested with a right of action to compel payment of its claim by Berman?

It has been well said that in no department of the law has a more obstinate and persistent battle between practice and theory been waged than in regard to the answer to the question: Whether a right of action accrues to a third person from a contract made by others for his benefit? Nor is the strife ended. (An excellent introduction to the subject is contained in Prof. Crawford D. Hening's "History of the Beneficiary's Action in Assumpsit," reprinted in 3 Select Essays in Anglo-American Legal History, 339.)

For a great many years there have been two conflicting doctrines: First, that a contract made by two parties for the benefit of a third may create an enforceable right in that third person; second, that one not in "privity of contract" has no enforceable right.

The general rule of the common law in Pennsylvania, that no one not a party to an obligation can maintain an action thereon in his own name, has been subject to some modification as applied to certain classes of contracts. See the opinion of Mr. Justice Kephart in Greene County, for use, v. Southern Surety Co., 292 Pa. 304.

The leading case in our state is Blymire v. Boistle, 6 Watts 182. In that case a debtor sold certain land to the defendant, receiving in return the defendant's promise to pay the price to the promisee's creditor in satisfaction of the promisee's debt. In a suit by the creditor on this promise the court gave judgment for the defendant, saying that the contract was made for the benefit of the promisee and not for the benefit of the plaintiff. This case is in direct conflict with the leading New York case of Lawrence v. Fox, decided some twenty years later (20 N. Y. 268). In spite of the decisions of a few modern cases, the tendency seems to us to be clearly away from the decision in Blymire v. Boistle and toward a recognition of enforceable rights in both donees and creditors. The clearest exposition of the present state of the law in the State of Pennsylvania is to be found in Brill v. Brill, 282 Pa. 276. In that case the test applied is whether the promise to pay sums of money to the creditor of the promisee is primarily for the third person's benefit or for that of the promisee.

Our courts have recognized that creditor beneficiaries, that is, those to whom performance gives any satisfaction of a legal debt owed by the promisee, have enforceable rights in several classes of cases. They are: (1) Assumption of mortgage debts by a grantee; (2) assumption of a testator's debts by a devisee; (3) assumption of debts by the purchaser of a business.

In considering the questions raised in our case we are concerned only with the third classification. Where one purchases the stock of a tradesman and undertakes to take the place, fill the contracts and pay the debts of the vendor, an action may be had upon a promise made by the purchaser of the property to the seller to pay a debt due from the seller to the third person: 13 C. J. 707; Sargent v. Johns, 206 Pa. 386; Delp v. Bartholomay Brewing Co., 123 Pa. 42.

Notwithstanding Blymire v. Boistle, the clear weight of authority now is that the creditors of one who sells his business assets can maintain suit against a purchaser if the latter promises the seller to pay those creditors: Commercial Bank v. Wood, 7 W. & S. 89; Bellas v. Fagely, 19 Pa. 273; Sargent v. Johns, 206 Pa. 386; Howes v. Scott, 224 Pa. 7; Wray v. Bowman, 74 Pa. Superior Ct. 479.

Opposed to this line of cases is a series of authorities pointed out and discussed by Professor Corbin in his article, "Third Party Beneficiaries in Pennsylvania," 77 U. of P. L. Rev. 1: Ramsdale v. Horton, 3 Pa. 330; Torrens v. Campbell, 74 Pa. 470; Adams v. Kuehn, 119 Pa. 76; Sweeney v. Houston, 243 Pa. 542.

Howes v. Scott, 224 Pa. 7, is a case where L conveyed an interest in land to the defendant and the latter promised to pay the debt that L owed to plaintiff. It was held that the plaintiff could enforce the promise. We have here an instance of a decision in direct conflict with Blymire v. Boistle. See, also, Bruce v. Howley, 29 Pa. Superior Ct. 169.

The right of the creditor in some cases is recognized on the so-called "asset" theory, i. e., the theory that the defendant has received assets to which the plaintiff is said to have some sort of "title." Of course, if the assets transferred, whether they consist of land or title to choses in action, are accepted by the transferee as a trust fund out of which he undertakes to pay the claims of creditors, the creditors are beneficiaries of a trust and have the rights and remedies both in equity and in law that are customarily available to a *cestui que trust*. In the class of cases applicable to the disposition of the question here raised, however, we have no trust fund. The property and assets conveyed to the promisor are merely the consideration for his promise: Sargent v. Johns, supra; Bruce v. Howley, supra.

As was said by Mr. Justice Simpson in Tasin v. Bastress, 284 Pa. 47, 55: ". . . it necessarily follows that where, as here, the beneficiary is the only one who can be substantially benefited by such a promise, he should be allowed to recover in some form of action, (Kountz v. Holthouse, 85 Pa. 235; Hostetter v. Hollinger, 117 Pa. 606, 611; Edmundson's Est., 259 Pa. 429, 435; McBride v. Western Pa. Paper Co., 263 Pa. 345, 349; Depuy v. Loomis, 74 Pa. Superior Ct. 497) and hence, in certain jurisdictions, equity will compel specific performance of it, when requested by the beneficiary so to do: 1 Williston on Contracts, sections 358, 359; Corbin's American Edition of Anson on Contracts, page 350. With us, equity originally had to be, and still is, administered in courts of law, by actions of assumpsit, and no reason appears why it may not be in this class of cases. Indeed, it always has been." Quoting from Professor Corbin's article referred to: "The property and assets conveyed to the promisor are merely the consideration for his promise, they are not to be administered by him as a trust fund, and the defendant is a debtor, not a trustee (Adams v. Kuehn, 119 Pa. 76). The majority of the cases should be followed too without using any 'society' or 'trust fund' theory and without any attempt to distinguish the minority cases." See, also, Mitchell v. Liberty Clay Products, 291 Pa. 282, Greene County, for use, v. Southern Surety Co., 292 Pa. 304.

In the last-cited case we have a very exhaustive opinion by Mr. Justice Kephart on third party beneficiaries in Pennsylvania.

The fact that the parties to a contract have executed an instrument under seal should not affect the rule as to a third party beneficiary's right to sue. True, a hundred years ago the presence of a "seal" on the written contract would have prevented a third party beneficiary from having a remedy: Strohecker v. Grant, 16 S. & R. 237. True, also, that in a recent case this principle was revived as a makeweight for a decision which the court had reached on other grounds: Greene County v. Southern Surety Co., *supra*. We think that there is more persuasive authority for the better rule that if the right of a beneficiary is recognized at all, it should be recognized in the case of contracts under seal: 13 C. J. 818; Brill v. Brill, *supra*, at p. 282. This view is adopted by the American Law Institute in its "Restatement of the Law of Contracts," § 134, which should likewise be examined for a clarification of the entire subject.

In the case of Brill v. Brill, *supra*, Judge Stern, in the court below, said (p. 282): "There was formerly a question as to whether a third person not a party to a contract could bring suit on it when it was under seal, and therefore whether the action had to be in covenant instead of in assumpsit (Strohecker v. Grant's Executors, 16 S. & R. 237), . . . but this was a mere technicality dependent upon the old rules of pleading, and apparently no longer exists, since there are many cases in the Pennsylvania reports where actions by third persons upon bonds under seal have been allowed as, for example, in Com. v. National Surety Company, supra [253 Pa. 5, 12]." See, however, Shermet v. Embick, 90 Pa. Superior Ct. 269, which appears to be in conflict.

Although a seal retains in part its common-law force in limiting a right of action, yet this is not true where its use is mere surplusage: Baum v. Dubois, 43 Pa. 260; Jones v. Horner, 60 Pa. 214; Swisshelm v. Swissvale Laundry Co., 95 Pa. 367; Lancaster v. Knickerbocker Ice Co., 153 Pa. 427; Ottman v. Nixon-Nirdlinger, 301 Pa. 234.

The right of the plaintiff is independent of the use of the seal and is founded upon the interest vested in him by law, under the authorities, as a third party beneficiary of the contract. See an interesting discussion by Frederick E. Crane, "The Magic of the Private Seal" (1915), 15 Col. Law Rev. 24.

It was clearly the intention of the parties in this case, as gathered from the agreement, to transfer the entire moving picture business upon the premises agreed to be conveyed. Part of the consideration so passed to the defendant under the agreement was represented by the fixtures and the appurtenances used in the conduct of the moving picture business, and the debt in suit, which, *inter alia*, the defendant undertook to pay, was incurred for equipment required in the conduct of the business. The defendant received property, to wit, the entire assets and equipment of the theatre, upon his promise to advance certain sums of money to pay the debt incurred in connection with said equipment to the plaintiff, who has a direct right of action against the promisor under the authorities here discussed.

To sum up, and using the language of Professor Corbin: "If the terms of the contract provide, either expressly or impliedly, that a third party shall have a right to the promised performance, the courts should give effect to the provision. If it appears that the promisee contracted for the promised performance as a donation to the third party, that party has an enforceable right. And if the contract is so made that the promised performance will discharge a duty of the promisee to a third party, that party can directly

enforce the contract, since this procedure will attain the objects for which the contract was made at the least expense to the promisee and to society."

The plaintiff creditor, we think, under this contract, obtained an enforceable right when the defendant undertook to pay what might be due. The benefit to the plaintiff creditor was merely a desired intermediate object of the promisee. The parties to the contract contemplated that the defendant should perform in such a manner as would satisfy the debt owed by Stiefel (the promisee) to the plaintiff: Nimlet's Estate, 299 Pa. 359; Van Horn *v.* Kemena, 281 Pa. 579. The corporation "thereafter to be formed" was to be the instrumentality through which the defendant would discharge the claim. The contract imposed a primary burden and duty upon the defendant to pay certain debts of the business that was being sold and conveyed to him. Defendant agreed to furnish the funds with which to pay the plaintiff's claim. We do not think it fatal to the plaintiff's rights of recovery that he failed to aver "that it became necessary for the defendant to advance money to the corporation thereafter formed," or that the corporation requested the defendant for funds.

The question to be decided, under section twenty of the Practice Act, which is invoked by the defendant, is not whether a statement is so clear in both form and specification as to entitle the plaintiff to proceed to trial without amending it, but whether, upon the facts averred, it shows as a matter of law that the plaintiff is not entitled to recover: Rhodes *v.* Terheyden, 272 Pa. 397; Long *v.* McAllister, 275 Pa. 34; Franklin Sugar Refining Co. *v.* Lykens Mercantile Co., 274 Pa. 206. We think the facts can and should all be developed upon a full hearing of the merits.

The question of law raised by the defendant is determined against him, with leave to file an affidavit of defense to the merits within fifteen days.